## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NANCY ASARO and LORI DRING,**<br><br>        **Plaintiffs,**<br><br>**v.**<br><br>**MICHAEL G. ABERNATHY, MARY B. ABERNATHY, CHRISTINA DONATI-DOUGHER, BRIAN R. DOUGHER, JUDITH TADDER, ALLAN L. TADDER, MARY ELIZABETH EMMEL, WILLIAM J. EGAN, JR., WILLIAM J. EGAN, and DENNIS JOHN DOUGHERTY**<br><br>        **Defendants.** | **NO.: 3:23-CV-01576**<br><br>**JUDGE WILSON** |

## PLAINTIFFS' SUR-REPLY BRIEF
## IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Philip A. Davolos, III, Esquire
Supreme Court I.D. #210225
CIPRIANI & WERNER, P.C.
415 Wyoming Avenue
Scranton, PA 18503
Telephone: 570-347-0600
*Attorneys for Plaintiffs Nancy Asaro and Lori Dring*

Howard A. Rothenberg, Esquire
Supreme Court I.D. #38804
Ryan P. Campbell, Esquire
Supreme Court I.D. # 317838
ROTHENBERG & CAMPBELL
345 Wyoming Avenue
 Suite 210
 Scranton, PA 18503
Telephone: 570-207-2889
*Attorneys for Plaintiffs Nancy Asaro and Lori Dring*

# **TABLE OF CONTENTS**

INTRODUCTION ……………..…………………………………..pp. 1

FACTUAL BACKGROUND (COUNTERSTATEMENT TO REPLY) …pp. 1-2

ARGUMENT………..……………………………………………..pp. 2-23

    A.    **Defendants' Motions Must Be Denied Because They Completely Omit Any Reference To And Fail To Acknowledge The 2019 Agreement, Which Specifically Preserves Dring/Asaro's Rights To Bring Claims For Trespass**…………………….......pp. 2-10

        i. The 2019 Agreement Terms and Context ……………………pp. 2-10

    B.    **The Egan Reply And The Abernathy Reply Contain Demonstrable Inaccuracies and Defendants' Motions Should Be Denied**…………..………………….......pp. 10-21

        i.  The Egan Reply Mischaracterizes Facts and Law, and Egan Defendants' Motion Should be Denied. ................pp. 11-14
        ii.  The Third Amended Counterclaim Is Mischaracterized By Both The Egan Reply and the Abernathy Reply. .............pp. 14-16
        iii. Defendants' Replies Ignore the Distinction Between Trespass and Continuing Trespass, Because Successive Actions May Be Brought for Continuing Trespass. ..............pp. 16-17
        iv. Defendants Attempt to Convert The "Non-Easement" Into A Property Right, However The 2006 Agreement Does Not Create Any Property Rights. ................................pp. 17-19
        v.  Defendants Or Their Predecessors-In-Title and Interest Specifically Agreed That Dring/Asaro Could Present Their Attorneys' Fees Claims. ............................................pp. 19-20
        vi. Defendants' Reliance on Bowman v. Sunoco and Other Inapposite Authority is Misplaced and Fails to Justify Dismissal. ............................................pp. 20-21

CONCLUSION………………………………………………pp. 21

# TABLE OF CITATIONS

## CASES

Ariel Land Owners, Inc. v. Dring, CIV A 3:CV-01-0294, 2008 WL 189644,
(M.D. Pa. Jan. 18, 2008), amended on reconsideration in part,
CIV. A. 3:CV-01-0294, 2008 WL 3837482 (M.D. Pa. Aug. 13, 2008),
and aff'd, 374 Fed.Appx. 346 (3d Cir. 2010).........................................p. 11

Bowman v. Sunoco, Inc., 620 Pa. 28, 65 A.3d 901 (2013)....................p. 20-21

Caplan v. City of Pittsburgh, 375 Pa. 268, 100 A.2d 380 (1953)............p. 18-19

Caruso-Long v. Reccek, 2020 PA Super 276, 243 A.3d 234,
(Pa. Super. Ct. 2020)...............................................................................p. 17

Clarke v. MMG Ins. Co., 100 A.3d 271 (Pa. Super. 2014)........................p. 5

Crofton v. St. Clement's Church, 208 Pa. 209, 57 A. 570 (1904) ...............p. 18

De Sanno v. Earle, 273 Pa. 265, 117 A. 200 (1922)...............................p. 17

Diefenderfer v. Dring, CV 3:15-CV-0500, 2015 WL 5895748,
(M.D. Pa. Oct. 6, 2015).............................................................................p. 11

General Refractories Co. v. First State Ins. Co., 94 F. Supp. 3d 649,
(E.D. Pa. 2015)..........................................................................................p. 5

Gillespie v. Dring, 350 F. Supp. 3d 333 (M.D. Pa. 2018), aff'd,
19-2073, 2022 WL 1741888 (3d Cir. May 31, 2022)........................passim

Heist v. Tarbet, 1902 WL 2783, 18 Montg. 138,
27 Pa.C.C. 176 (Pa. Com. Pl. 1902)........................................................p. 5

Henry Shenk Co. v. City of Erie, 352 Pa. 481, 43 A.2d 99 (1945)...............p. 20

In re Holmes, 132 A.2d 918 (Pa. Super. 1957)......................................p. 21

<u>Johnson v. Jones,</u> 244 Pa. 386, 90 A. 649 (1914) …………...............................p. 18

<u>Lake v. Hankin Grp.,</u> 79 A.3d 748 (Pa.Cmwlth. 2013)…………………….…..p. 17

## INTRODUCTION

Plaintiffs, Nancy Asaro and Lori Dring ("Plaintiffs" or "Dring/Asaro"), submit this Sur-Reply Brief in Opposition to Defendants' Motions to Dismiss (ECF 17 and 18) ("Motions") and Defendants' Briefs in Support (ECF 23 and 24) ("Egan Brief" and "Abernathy Brief") and Defendants' Reply Briefs (ECF 38 and 40) ("Egan Reply" and "Abernathy Reply").[1]

## FACTUAL BACKGROUND (COUNTER STATEMENT TO REPLY)

It is time for Defendants to file an Answer. Defendants' Motions should be denied. This matter presents a textbook example of why movants should not treat Rule 12(b)(6) motions as summary judgment motions.

Specifically, though not referenced or mentioned anywhere in Defendants' Motions or prior submissions to the Court, there is an *April 20, 2019, Agreement and Release* ("2019 Agreement") between Dring/Asaro and Gillespie Plaintiffs[2]

---

[1] The Defendants in this action are Mary Elizabeth Emmel and  William J. Egan, Jr., Trustees, and William J. Egan ("Egan Defendants"); and Michael G. Abernathy, Mary B. Abernathy ("Abernathy Defendants"), Christa Donati-Dougher, Brian R. Dougher ("Dougher Defendants"), Judith Tadder, Allan L. Tadder ("Tadder Defendants") and Dennis John Dougherty (collectively, where appropriate all are referred to as "Defendants").

[2] With regard to the 2019 Agreement "Defendants" in this action fall into one of two categories: (a) those defendants who were plaintiffs ("Gillespie Plaintiffs") in the matter <u>Gillespie, et al. v. Dring</u>, 3:15-cv-00950- ARC  ("<u>Gillespie</u>") and (b) the "successors-in-interest or successors-in-title" to Gillespie Plaintiffs as described in the 2019 Agreement. All of the Defendants in this matter fall into one of these two categories, with Egan and Tadder Defendants, as former Gillespie Plaintiffs, being

that is binding on Defendants and controls. The 2019 Agreement contains, *inter alia*, an express reservation of rights in Dring/Asaro to bring the claims for trespass asserted in this action, where it states in relevant part, the following:

> NOW THEREFORE, intending to be legally bound, *[Gillespie] Plaintiffs* and Dring and Asaro, through their respective counsel, **agree on the following**:
>
> [...]
>
> 3. Dring and Asaro reserve the right to pursue trespass claims for any trespass over the West Shore Strip that may be committed by [Gillespie] **Plaintiffs** or **their successors-in-interest** or **successors-in-title** *on or after April 1, 2019*, and to pursue any claims for any *continuing trespass* which commenced *prior to that date*.

[Exhibit "A," 2019 Agreement ¶3, emphasis supplied].

## ARGUMENT

**A. Defendants' Motions Must Be Denied Because They Completely Omit Any Reference To And Fail To Acknowledge The 2019 Agreement, Which Specifically Preserves Dring/Asaro's Rights To Bring Claims For Trespass.**

Defendants' characterization of and reliance on the August 28, 2006, Settlement Agreement ("2006 Agreement") is wrong, unsubstantiated, and certainly cannot serve as a basis for dismissal of Plaintiffs' Complaint.

---

direct parties to the 2019 Agreement and the remaining Defendants in this action being "successors-in-interest or successors-in-title" to Gillespie Plaintiffs.

As a fundamental matter of fairness, Defendants' Motions must be denied, because Defendants either ignore or withhold from the record a subsequent writing and release (2019 Agreement) between Dring/Asaro and Defendants that: (a) completely negates the basis for Defendants' Motions, and (b) exposes their misplaced reliance on the 2006 Agreement.

i.    The 2019 Agreement Terms and Context:

In 2015, Gillespie Plaintiffs (a group of over sixty (60) property "owners" with lots on West Shore Drive) sued Dring/Asaro, *inter alia*, (1) to compel conveyance of written easements over the West Shore Parcel ("WSP") under the 2006 Agreement; and (2) alternatively for easements by prescription over the WSP.[3] In Gillespie, Dring/Asaro brought a Counterclaim for Trespass against Gillespie Plaintiffs. (ECF 32-1) [Doc. 25]

On October 10, 2018, the late Hon. A. Richard Caputo, U.S. District Judge ("Judge Caputo"), granted summary judgment in favor of Dring/Asaro on all Gillespie Plaintiffs' claims. Gillespie v. Dring, 350 F. Supp. 3d 333 (M.D. Pa. 2018). As a result, only Dring/Asaro's Trespass Counterclaim remained unresolved, and

---

[3] (See, Docket No.: 3:15-cv-00950- ARC at Doc. 22, Amended Complaint). For ease of reference, unless otherwise stated, all docket entries cited as "Doc. __" in this Sur-Reply refer to docket entries in Gillespie v. Dring, Docket No.: 3:15-cv-00950. Unless otherwise stated, all docket entries cited as "EFC___" in this Sur-Reply refer to documents previously filed in this matter, under Docket No.: 3:23-cv-01576-JPW.

Judge Caputo put the matter on the April 2019 Trial Calendar. [Doc. 110, Order of November 20, 2018, Caputo, J. – Denying Gillespie Plaintiffs' Motion for Reconsideration and placing trial of Counterclaim on April 2019 Trial List].

The 2019 Agreement was executed on April 20, 2019, six (6) months after Judge Caputo granted Dring/Asaro summary judgment on October 10, 2018.  Thus, with the 2019 Agreement, Dring/Asaro and the ***Gillespie Plaintiffs*** **agreed** to dismissal of Dring/Asaro's Counterclaim for Trespass ***without prejudice*** [¶1], and further agreed to the following **partial** release:

> 2. ***Without releasing*** any of their claims for any ***continuing trespass***, Dring and Asaro hereby release Plaintiffs for all claims arising out of any trespass over the West Shore Strip that has occurred or may occur ***prior to April 1, 2019***.

[Exhibit "A," 2019 Agreement ¶2]

In exchange for the foregoing release, Gillespie Plaintiffs (Defendants in this action) acknowledged Dring/Asaro's ownership of the West Shore Parcel [Id at ¶7] and Gillespie Plaintiffs further ***agreed*** that Dring/Asaro reserved the rights to pursue trespass claims against Gillespie Plaintiffs or **their successors-in-interest** or **successors-in-title** (Defendants in this action) for trespass over the WSP committed *on or after April 1, 2019*, and to pursue any claims for any *continuing trespass* which may have commenced *prior to April 1, 2019*. [Id at ¶3].

4

Specifically, the 2019 Agreement states, in relevant part, the following:

> NOW THEREFORE, intending to be legally bound, *[Gillespie] Plaintiffs* and Dring and Asaro, through their respective counsel, **agree on the following**:
>
> [...]
>
> 3. Dring and Asaro reserve the right to pursue trespass claims for any trespass over the West Shore Strip that may be committed by [Gillespie] **Plaintiffs** or **their successors-in-interest** or **successors-in-title** *on or after April 1, 2019*, and to pursue any claims for any *continuing trespass* which commenced *prior to that date*.

[Exhibit "A," 2019 Agreement ¶3, emphasis supplied].

"Pennsylvania's 'rules of construction do not permit words in a contract to be treated as surplusage . . . if any reasonable meaning consistent with the other parts can be given to it.'" <u>General Refractories Co. v. First State Ins. Co.</u>, 94 F. Supp. 3d 649, 661 (E.D. Pa. 2015) (quoting <u>Clarke v. MMG Ins. Co.</u>, 100 A.3d 271, 276 (Pa. Super. 2014)).

The 2019 Agreement expressly states that counsel for the parties have the authority to enter into the Agreement and Release on behalf of their respective clients. [Id at ¶12].[4] The 2019 Agreement also contains an integration clause – stating that it is the entire agreement and that it may only be amended by a signed writing.

---

[4] Importantly, the 2019 Agreement is signed by the exact same attorneys who signed the 2006 Agreement. The late Michael Profita, Esquire, signed both agreements for Dring/Asaro. Joseph A. O'Brien, Esquire, signed both the 2006 Agreement and the 2019 Agreement on behalf of his clients.

[Id ¶ 11]. Finally, the 2019 Agreement states that "[t]he parties agree that the Release set forth in Paragraph 2, above, shall not be effective unless and until the Court approves the Stipulated Order attached hereto as Exhibit 'A'." [Id ¶13].

The release of only pre-April 1, 2019, trespass claims (specifically not releasing pre-April 1, 2019 claims for continuing trespass) as described in ¶ 2 of the 2019 Agreement only became effective on April 23, 2019, when Judge Caputo entered an Order in <u>Gillespie</u> that approved the proposed stipulated order – and thereby dismissed Dring/Asaro's Counterclaim without prejudice and permitted Dring/Asaro to file an application for Attorneys' Fees within thirty (30) days. [Doc. 114, Order Signed by Judge Caputo 04/23/2019, attached hereto as Exhibit "B"]

Respectfully, there is simply no way whatsoever to read the 2019 Agreement as a release of all prior claims for continuing trespass over the WSP. It specifically reserves and does not release continuing trespass claims. Moreover, it is simply not plausible, in the context of the subsequent 2019 Agreement, to read the 2006 Agreement as either: (a) a release future claims for trespass, or (b) as intended to release future claims for trespass. The 2019 Agreement and the 2006 Agreement were negotiated and signed by the same attorneys.

If, as Defendants contend, the 2006 Agreement released all past ***and future*** claims for trespass from August 28, 2006, forward, then surely those same Defendants would not negotiate for the release of claims for trespass that occurred

between August 29, 2006 and April 1, 2019. Such a release would be of no value to those who claim to have already been released.

Moreover, and perhaps even more importantly, under no circumstances would a party who believed themselves released from all future trespass claims in 2006 ever enter into a subsequent agreement expressly reserving the rights in an acknowledged landowner to pursue future claims for trespass that occur after April 1, 2019, and/or to pursue all continuing trespass claims that began prior to April 1, 2019.

Defendants ask a court, now for a third time, to rewrite the 2006 Agreement to their liking. However, it was not possible for Judge Caputo to rewrite the 2006 Agreement in 2018, it was not possible for the Third Circuit to rewrite the 2006 Agreement in 2022, and it is not possible for this Honorable Court to rewrite the 2006 Agreement in 2024. The entire basis for Defendants' argument *du jour vis-à-vis* the 2006 Agreement is destroyed and blatantly contradicted by the language of the subsequent 2019 Agreement.

Moreover, Defendants' conduct exposes their absolute understanding that Dring/Asaro did not release future claims with the 2006 Agreement. On December 10, 2018, Attorney Profita sent a letter to Attorney O'Brien and began a months-long negotiation that ultimately resulted in the 2019 Agreement. [See, Exhibit "C" to this Sur-Reply].

Plaintiffs' Brief in Response (ECF 32) cited and attached Attorney O'Brien's November 26, 2019, letter, and litigation update, generically addressed to "Dear Lake Residents," that states in part, the following:

> Unfortunately, and as we previously informed you, we were not so successful in the lawsuit instituted [against] Dring and Asaro [by] the West Shore Property Owners. **In that case, Judge Caputo decided in favor of Dring and Asaro concluding that the West Shore Property Owners do not have rights to access Lake Ariel over the west shore strip.**

(ECF 32-3, Exhibit "C" Plaintiffs' Response).

Egan Defendants challenge the meaning and content of Attorney O'Brien's letter by stating, that it was just a letter authored by "one of the Property Owners' attorneys more than thirteen (13) years after the August 2006 Settlement." Egan Reply at p. 8. (ECF 38, p. 8). Egan Defendants contend that the intent of the parties should not be ascertained by extrinsic evidence created *years* after the preparation of the settlement documentation. (Id.) However, it seems that Attorney O'Brien was writing to the lake residents only seven (7) **months** and not thirteen (13) years after he negotiated and signed the 2019 Agreement.   Likewise, the Abernathy Reply poopoos the November 26, 2019, letter as irrelevant and "old news." Abernathy Reply at p. 7-8 (ECF 40, p.7-8) It's not at all old news, and it's very relevant in the context of the Gillespie litigation and the 2019 Agreement.

In fact, in August 2019, Egan and Tadder Defendants even attached the 2019 Agreement and relied on the 2019 Agreement in their briefing as Gillespie Plaintiffs. On August 1, 2019, Gillespie Plaintiffs filed a Brief in Opposition [Doc. 128] to Dring/Asaro's Motion for Attorneys' Fees. Gillespie Plaintiffs attached the 2006 Agreement as an Exhibit to their Opposition at Doc. 128-1. **Gillespie Plaintiffs attached the 2019 Agreement as an Exhibit to their Opposition at Doc. 128-2.** Gillespie Plaintiffs' Brief in Opposition to Dring/Asaro's Motion for Attorneys' Fees, expressly states that the 2019 Agreement only released claims for trespass (not continuing trespass) that occurred before April 1, 2019. [Exhibit "D", Gillespie Plaintiffs' Brief in Opposition, Doc. 128 at p. 10 of 35]. This is a direct admission by Defendants.[5]

On October 17, 2019, Judge Caputo awarded Dring/Asaro $282,383.93, in attorneys' fees as prevailing parties under Paragraph 14 of the 2006 Agreement. [Doc. 136, Order Awarding Fees]. It seems that Attorney O'Brien's November 26, 2019, letter to the lake community was in the aftermath of the attorneys' fee award.

Sadly, in March 2020, Judge Caputo passed away. Gillespie was reassigned to the Honorable Matthew W. Brann on March 23, 2020. Thereafter, Gillespie

---

[5] Importantly, the 2019 Agreement actually preserves both past and future claims, because it was signed on April 20, 2019, did not become effective until April 23, 2019, and only releases claims for trespass (not continuing trespass) up to April 1, 2019 – so there are 22 days (between April 1, 2019 and April 23, 2019) of past trespass claims that are also not released under the 2019 Agreement.

Plaintiffs added two new attorneys to their legal team who, between October 2020 and October 2021, sought to have the entire Gillespie matter dismissed and treated as a nullity on jurisdictional grounds. This effort by Gillespie Plaintiffs failed on October 27, 2021. [See, Doc. 177-178, Opinion and Order Severing Non-Diverse Party and Denying Rule 60 Relief].

However, Gillespie Plaintiffs' "Hail Mary" attempt to avoid Judge Caputo's October 10, 2018, Opinion and Order, which Attorney O'Brien described as a disastrous holding that: "the West Shore Property Owners do not have rights to access Lake Ariel over the west shore strip" is telling. (ECF 32-3, Exhibit "C" to Plaintiffs' Response). Gillespie Plaintiffs spent a year and hundreds, if not thousands, of hours of attorney time and related costs on a Rule 60 Motion seeking to nullify the prior six (6) years of litigation in Gillespie.

Respectfully, if Defendants believed that they could use the WSP without easements written or by prescription based on the 2006 Agreement alone – then they never would have invested so much time and so many resources in attempting to nullify Judge Caputo's Order granting summary judgment.

## B. The Egan Reply And The Abernathy Reply Contain Demonstrable Inaccuracies And Defendants' Motions Should Be Denied.

While all of Defendants' prior arguments are mooted by the 2019 Agreement, Plaintiffs will, to the extent that word limitations allow, attempt to address some of

the more egregious deficiencies and inaccuracies presented by Defendants' Reply Briefs.

      i.      <u>The Egan Reply Mischaracterizes Facts and Law, and Egan Defendants' Motion Should be Denied.</u>

From the very beginning, the Egan Reply presents an alternate reality as though it were fact. For example, the Egan Reply at p. 1 states that "Plaintiffs **assert** ownership of […] the 'West Shore Parcel' and claim that the Egan Defendants and others trespass on Plaintiffs' land …". (ECF 38, p. 1) (emphasis supplied). However, ownership in fee of the WSP is not a matter of assertion; there is simply no question that Plaintiffs own the WSP. In fact, in 2008, this Court held that Plaintiffs own the WSP in fee, and this Court has repeatedly made reference to that determination, on numerous occasions. <u>Ariel Land Owners, Inc. v. Dring</u>, CIV A 3:CV-01-0294, 2008 WL 189644, at *15 (M.D. Pa. Jan. 18, 2008), <u>amended on reconsideration in part,</u> CIV. A. 3:CV-01-0294, 2008 WL 3837482 (M.D. Pa. Aug. 13, 2008), and <u>aff'd,</u> 374 Fed.Appx. 346 (3d Cir. 2010); and as cited in <u>Diefenderfer v. Dring</u>, CV 3:15-CV-0500, 2015 WL 5895748, at *8 (M.D. Pa. Oct. 6, 2015)("[T]his Court has already entered judgment in favor of [Dring/Asaro] in the Prior Action as to record title of the South Strip, which is part of the Western Shore Strip."). Even more detrimental to Defendants' arguments concerning ownership of the WSP is ¶7 of the 2019 Agreement, that states in part: "**[Gillespie]** *Plaintiffs acknowledge Dring and Asaro's ownership of the west shore strip*…".

Second, the Egan Reply improperly cites to extrinsic documents, specifically at p. 2 of 14, and represents that Dring/Asaro's pre-trial memorandum in the original litigation, <u>Ariel Land Owners, Inc. v. Lori Dring and Nancy Asaro</u>, 3:01-cv-00294-ARC ("<u>Dring I</u>"), is the same as Count Five of the Third Amended Counterclaim in <u>Dring I</u>. It is not.

Dring/Asaro only made claims for Trespass against the so-called "Property Owners" in <u>Dring I</u>. Dring/Asaro did not make claims for Ejectment or Declaratory Judgment against the Property Owners in <u>Dring I</u>. Defendants' contention that Plaintiffs' admit this is false.

Egan Defendants ignore the content of Paragraph 9 of the 2006 Agreement. However, for the sake of completeness, we provide here both paragraphs 6 and 9 in their entirety:

> 6. The Property Owners on the one hand; and Dring/Asaro on the other hand do hereby release the other party and such party's ***predecessors*** in title, successors and assigns from any and all claims arising out of or relating to the Lawsuit and the Western Shore Strip including but not limited to claims for compensatory damages, punitive damages, trespass, attorneys fees, or costs of this court.

(2006 Agreement ¶ 6)

Unlike the claims released by Egan Defendants there was an express reservation of the right to make future claims in favor of Dring/Asaro contained in Paragraph 9, which reads as follows:

**9.  All claims against the Property owners set forth in the Third Amended Counterclaim will be dismissed with prejudice.**  All claims asserted in the action pending in the Court of Common Pleas of the 22nd Judicial District, Commonwealth of Pennsylvania, Wayne County,  Docket No.  246-2002 CV are hereby released, except to the extent any of such claims are preserved under the next sentence, and the parties agree that any claims preserved under the next sentence are not barred by this release.  Except for the issues referred to in Section 7 hereof, the remaining claims of ALO set forth in the Third Amended Complaint and the remaining claims of Dring/Asaro against ALO set forth in the Third Amended Counterclaim and the defenses raised by ALO and Dring/Asaro are preserved for trial.  Nothing in this  Agreement  shall  constitute  an  admission  or acknowledgement as to, or evidence of, the title of ALO or Dring/Asaro to any property, or the boundary line of any  property  owned  by  ALO  or  Dring/Asaro.   **This agreement shall not constitute a bar against or release of any  existing  or  future  rights,  claims  or  causes  of action  held  by  or  accruing  in  favor  of  Dring/Asaro, except  to  the  extent  specifically  released  or  to  be dismissed  as  provided  by this Agreement.**

(2006 Agreement ¶ 9)

To be clear, there really is no question that with the foregoing Dring/Asaro

only released claims for prior trespass, and only claims for prior trespass were

dismissed with prejudice. The key language being: "All claims against the Property

Owners *set forth in the Third Amended Counterclaim*" will be dismissed with

prejudice. Likewise, ¶9 expressly states that it **shall not** constitute a "release of any

existing or future rights, claims or causes of action held by or accruing in favor of

Dring/Asaro, except to the extent specifically released." Those claims that were

dismissed are only those that had accrued at the time of the dismissal as set forth in the Third Amended Counterclaim.

This by definition did not include future claims for trespass, ejectment, or declaratory judgment, for many reasons, not the least of which was the contemplated written easement in favor of the Property Owners. (2006 Agreement ¶3).

Moreover, had there been any confusion about whether the 2006 Agreement included the release of future claims for trespass, one need look no further than the 2019 Agreement which makes clear that the 2006 Agreement did not release future claims for trespass (continuing or otherwise).

      ii.    <u>The Third Amended Counterclaim Is Mischaracterized By Both The Egan Reply And The Abernathy Reply.</u>

Given the 2019 Agreement, Defendants' arguments concerning the Third Amended Counterclaim in <u>Dring I</u> and the scope of the release in the 2006 Agreement are moot.

However, there is only one "claim" set forth in the Third Amended Counterclaim against the Property Owners[6] and the only "claim" set forth in the Third Amended Counterclaim against the Property Owners was Count Five – Trespass.

---

[6] Of the parties to *this* action only Egan Defendants and Judith Tadder were Property Owners in 2006.

The Third Amended Counterclaim identifies the parties to <u>Dring I</u> as follows: (1) defendants/counterclaim plaintiffs, Lori Dring and Nancy Asaro; (2) plaintiff/counterclaim defendant, ALO (¶3); and the non-ALO counterclaim defendants are defined as "owners of certain real property lying near or bordering on the western shore of Lake Ariel and the interconnecting stream between Lake Ariel and Mud Pond (collectively "PROPERTY OWNERS"). (¶4)"

The first four counts of the Third Amended Counterclaim are only directed at ALO.  Only Count Five of the Third Amended Counterclaim is directed toward the "PROPERTY OWNERS" ***and*** ALO.

Dring/Asaro sought various forms of relief, to be sure, under their claim for Trespass in Count Five. **However, they did not set forth a claim in the Third Amended Counterclaim for "Ejectment" against the so-called Property Owners, period.** The only place in the Third Amended Counterclaim, Count Five, that ejectment is even mentioned is under the prayer for relief, and then it is ***only*** in relation to ALO, and **not the Property Owners**, that ejectment is even mentioned:

> D. Order that Plaintiff [ALO] be ejected from the lands of the Counterclaim Plaintiffs [Dring/Asaro] described in paragraph 42 hereof, and that Plaintiff [ALO] immediately cause the waters of Lake Ariel and Mud Pond to be returned to an elevation of 1,423.5 feet above sea level thereby removing said waters from the lands of Defendants[Dring/Asaro];

(ECF 18-2, p. 35)

The Abernathy Brief contends, inaccurately, that ¶D of Count Five refers to a claim against the Property Owners. It does not, and the manner in which the foregoing is partially quoted in the Abernathy Brief at p. 4 (ECF 24 p. 9 of 28) is misleading at best.

        iii.    <u>Defendants' Reply Briefs Ignore the Distinction Between Trespass and Continuing Trespass, Because Successive Actions May Be Brought for Continuing Trespass.</u>

The 2019 Agreement expressly addresses the distinction between claims for trespass and continuing trespass and reserves in Dring/Asaro the right to bring claims for trespasses that occur after April 1, 2019, and continuing trespass that commenced prior to April 1, 2019.

Continuing trespass by definition accrues anew in the future unless, and until, it ceases. Nothing in Defendants' briefing distinguishes between trespass and continuing trespass. This argument is omitted by Defendants, because the distinction between continuing and permanent trespass obviously destroys their claim of release under the 2006 Agreement. This is brought into even sharper focus in the context of the 2019 Agreement.

Successive actions may be maintained for continuing trespass. A subsequent claim for continuing trespass is not a second claim for the same trespass. <u>Heist v. Tarbet</u>, 1902 WL 2783, at *1 (Pa. Com. Pl. 1902) ("This is not a second action for the same trespass. Where there is a continuing trespass there may be successive

16

actions for damages."); <u>Caruso-Long v. Reccek</u>, 2020 PA Super 276, 243 A.3d 234, 239 (Pa. Super. Ct. 2020)("…a party aggrieved by a continuing trespass or nuisance can maintain a succession of actions based on continuing infractions or the aggravation of the original offense…"); and <u>Lake v. Hankin Grp.</u>, 79 A.3d 748, 758 (Pa.Cmwlth. 2013).

<blockquote>iv.   <u>Defendants Attempt to Convert The "Non-Easement" Into A Property Right, However The 2006 Agreement Does Not Create Any Property Rights.</u></blockquote>

Frustrated and unable to compel an easement from Dring/Asaro, Defendants seek to achieve the same result by arguing that the 2006 Agreement somehow creates a property right – of undefined scope, duration, size, nature or even location – against Dring/Asaro. Defendants claim that Dring/Asaro cannot sue them for trespass, or apparently anything else related to the WSP. Defendants' collective briefing is devoid of any of the requisite legal analysis on this topic. Yet, Defendants boldly claim that a stale and superseded writing (2006 Agreement) somehow affords them the right to use the WSP however they so choose, because as they see it, Dring/Asaro cannot sue to stop them from using the WSP. They are wrong.

The 2006 Agreement is not a conveyance, does not run with the land, and is not recorded and was not meant to be recorded. <u>De Sanno v. Earle</u>, 273 Pa. 265, 270, 117 A. 200, 202 (1922). First, quite obviously, the 2006 Agreement is not a deed or instrument of conveyance. Second, pursuant to the 2006 Agreement, the only

conveyance of any property rights in the WSP was to occur in one document – the **deed** to ALO, subject to easements in favor of the Property Owners. This did not happen – and no property rights were created or extinguished by the 2006 Agreement – period.

Third, to create property rights (or restrictions) that are intended to and do run with the land – the document must clearly express the intention of the parties. "[C]ourts will not recognize implied rights or extend" rights by implication. <u>Id</u> citing, <u>Crofton v. St. Clement's Church</u>, 208 Pa. 209, 117 A. 200 (1922); <u>Johnson v. Jones</u>, 244 Pa. 386, 389, 90 Atl. 649, 52 L. R. A. (N. S.) 325.

> The test in determining whether a particular covenant runs with the land is the intention of the parties, and, to ascertain such intent, resort may be had to the words of the covenant read in the light of the surroundings of the parties and the subject of the grant. [] If the language is ambiguous and the parties have put their construction on it in the past such construction is considered the best evidence of their intent. []

<u>De Sanno</u>, 273 Pa. 265, 270, 117 A. 200, 202 (1922) (internal citations omitted). In fact, the language used in the 2019 Agreement (and absent from the 2006 Agreement) is specifically the type of language that parties would use to create or release rights that are binding on subsequent purchasers and run with the land. Paragraph 3 of the 2019 Agreement expressly uses the term **successors-in-title**. This language is absent from the 2006 Agreement, and its absence is telling. See also <u>Caplan v. City of Pittsburgh</u>, 375 Pa. 268, 271–72, 100 A.2d 380, 384 (1953):

18

> The deed, in which the release was included, was duly *recorded*. The grantee having *released* the city from liability for damages, for a valuable consideration, and having recorded the instrument, any future transfers of title were with notice and therefore subject to such covenant.

Id. (emphasis in original).

In <u>Caplan</u> – the release was contained in a deed from the Defendant (City) to the plaintiff's father. The deed described the location within the parcel by metes and bounds that was subject to the release, it was a 20 x 21 portion of a larger parcel that the Defendant (City) reserved the right to condemn and specifically required the original grantee to waive the right to sue for damages in the event that the specific portion of the property was condemned for municipal purposes in the future. Id. There is simply nothing of the kind present in the 2006 Agreement.

        v.    <u>Defendants Or Their Predecessors-In-Title and Interest Specifically Agreed That Dring/Asaro Could Present Their Attorneys' Fees Claims</u>

All Defendants seem to take issue with Dring/Asaro's application for Attorneys' Fees as a prevailing party under the 2006 Agreement and Dring/Asaro's position in this litigation that they are not barred from bringing claims for Trespass. This is set forth at length in the Abernathy Reply and the Egan Reply. What neither Reply mentions is the 2019 Agreement, where Defendants (or their predecessors-in-interest **and title**) expressly agreed that (a) Dring/Asaro could make their Motion for Attorneys' Fees, and (b) that Dring/Asaro did not release and rather reserved

their rights to pursue claims for trespass that occurred after April 1, 2019, and continuing trespass claims that existed prior to April 1, 2019.

      vi.    <u>Defendants' Reliance on Bowman v. Sunoco and Other Inapposite Authority is Misplaced and Fails to Justify Dismissal.</u>

Defendants' newfound reliance on <u>Bowman v. Sunoco, Inc.</u>, is telling, because it is difficult to imagine a case of less relevance both factually and legally to the resolution of the instant motion, 620 Pa. 28, 32, 65 A.3d 901, 903 (2013). There, unlike here, the contract in question involved employment. There, unlike here, the plaintiff agreed to waive her right to sue her employers' customers for damages related to injuries covered by the Workers' Compensation Act. 77 P.S. § 1 et seq. Plaintiff was a security guard. Plaintiff's employer was a private security contractor that contracted with customers to provide on location security services. Plaintiff fell while on location and providing security services at a refinery that contracted with her employer. The waiver or release of claims against her employer's customer was enforced and held valid by the Supreme Court.

> In the present case, the *only* actions the disclaimer contemplated were actions that could occur in the future. […]The disclaimer was a condition of employment, and the parties certainly contemplated it would encompass future causes of action—**the document's very purpose was to dictate how claims for injuries would be handled.**

<u>Bowman v. Sunoco, Inc.</u>, 620 Pa. 28, 42, 65 A.3d 901, 909 (2013).

Respectfully, in the context of the 2019 Agreement – <u>Bowman</u> supports Dring/Asaro's right to bring claims for trespass and continuing trespass in this action. The distinctions between the type, nature, scope, and definite terms contained in the <u>Bowman</u> release – dictate that it would not support a finding of release of future claims under the 2006 Agreement, even in the absence of the 2019 Agreement. However, that is, of course, a moot point.

Likewise, Defendants cannot rely on <u>In re Holmes</u>, 132 A.2d 918 (Pa. Super. 1957), because it is inapposite in that it involved not a release but successive litigation for condemnation of the same parcel.

## <u>CONCLUSION</u>

Plaintiffs absolutely do not concede that any of the relief that they seek under Count II or Count II of the Complaint is improper. Thus, that prong of Defendants' Motions should also be denied. For all the foregoing reasons, Plaintiffs respectfully request that Defendants' Motions to Dismiss be denied.

Respectfully submitted,

CIPRIANI & WERNER

BY: ***/s/ Philp A. Davolos III***
       **PHILIP A. DAVOLOS, III, ESQ.**
       415 Wyoming Avenue
       Scranton, PA  18503
       Telephone:  (570) 347-0600
       Fax:  (570) 347-4018
       pdavolos@c-wlaw.com

*Attorneys for Plaintiffs  Nancy Asaro and Lori Dring*

-AND-

ROTHENBERG & CAMPBELL
Howard A. Rothenberg (Id.# 38804)
Ryan P. Campbell (Id.# 317838)
345 Wyoming Avenue, Ste. 210
Scranton, PA 18503
p. 570.207.2889
f. 570.207.3991
HRLaw01@gmail.com
HRLaw04@gmail.com

*Attorneys for Plaintiffs  Nancy Asaro and Lori Dring*

## LOCAL RULE 7.8(b)(2) CERTIFICATION

Counsel hereby certifies that the PLAINTIFFS' SUR-REPLY BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS contains 4,988 words according to the word processing system used to prepare the Brief.

CIPRIANI & WERNER

BY:  */s/ Philip A. Davolos*
         Philip A. Davolos, III, Esquire

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that I served a true and correct copy of PLAINTIFFS' SUR-REPLY BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS, via ECF, upon all counsel of record, on the 23rd day of February 2024, addressed as follows:

Geff Blake, Esquire
Blake & Walsh, LLC
436 Jefferson Avenue
Scranton, PA 18510
gblake@blakewalshlaw.com

Daniel T. Brier, Esquire
Richard L. Armezzani, Esquire
Myers, Brier & Kelly, LLP
425 Biden Street, Suite 200
Scranton, PA 18503
dbrier@mbklaw.com
rarmezzani@mbklaw.com

Patrick J. Boland III, Esquire
James D. Greco Esquire
MARSHALL DENNEHEY, P.C.
P.O. Box 3118
Scranton, PA 18505-3118
pjboland@mdwcg.com
jdgreco@mdwcg.com,

Harry T. Coleman, Esquire
Owen M. Coleman, Esquire
41 N. Main Street
3rd Floor, Suite 316
Carbondale, PA 18407
(570) 282-7440
Harry@harrycolemanlaw.com

By:   */s/ Philp A. Davolos*
      **PHILIP A. DAVOLOS, III, ESQ.**