## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NANCY ASARO AND LORI DRING, | CIVIL ACTION NO. 3:23-CV-01576 |
| Plaintiffs, | (SAPORITO, J.) |
| v. | |
| MICHAEL G. ABERNATHY, et al., | |
| Defendants. | |

## <u>MEMORANDUM</u>

The current action before the Court represents only a singular step in a long-standing dispute over property rights at Lake Ariel in Wayne County, Pennsylvania. This action, and all those previous actions, involve the same three groups of parties. The defendants ("Property Owners") collectively represent one of the parties, and they own land on the west side of Lake Ariel.[1] The plaintiffs represent a second party, and they own property south of the Property Owners' land in addition to a strip of land between the Property Owners and the lake.

---

[1] In this current litigation, the defendants note that they consist of "either parties to the [2006] Release or stand as 'successors' to original parties' property interests." (Doc. 64, at 13). It is undisputed that the Property Owners in the current litigation can claim the benefits of the 2006 Settlement Agreement.

This strip of land is referred to as the Western Shore Strip and shares a common property boundary with Lake Ariel. The Ariel Land Owners ("ALO"), a non-party to this action, own the rights to Lake Ariel. For the last two decades, these parties have brought various lawsuits to define each party's land rights in the Western Shore Strip. The current case is yet another attempt to define those land rights. Before the Court are the Property Owners' motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.    Procedural Background

The dispute between the parties began when the plaintiffs purchased approximately fifty-two (52) acres of land adjoining Lake Ariel in 1996. Two years later, in 1999, ALO sued the plaintiffs in the Court of Common Pleas of Wayne County to prevent the plaintiffs from accessing the waters of Lake Ariel from their property. The action was later removed to U.S. District Court for the Middle District of Pennsylvania. In 2001, the plaintiffs purchased additional property surrounding Lake Ariel, specifically the 1.9 acres Western Shore Strip at the heart of the underlying action. The Western Shore Strip was used by many parties, including the Property Owners, as an unimpeded

pathway from their respects lots to the waters of Lake Ariel. The Property Owners commenced a state court action in the Court of Common Pleas of Wayne County against the plaintiffs for continuing access to that land. While the matter was ultimately stayed by this Court, the plaintiffs were permitted to amend their counterclaim in the first action and join the Property Owners as new defendants in the original action, thereby consolidating the claims and defense of all three parties into a singular case.

The consolidated action ("2001 Lawsuit") featured numerous claims and counterclaims, two of which are important in the underlying action. First, the plaintiffs brought trespass claims against the Property Owners for "the wrongful trespass upon the property owned in fee" by the plainitffs. (Doc. 1, ¶ 75). Second, the Property Owners brought prescriptive easement claims against the plaintiffs for the possession, traversing, and construction of structures on the plaintiffs' property. (*Id.*). Prior to trial, however, all three parties entered into a partial settlement agreement ("2006 Settlement Agreement"). Pertinent to the underlying action, the 2006 Settlement Agreement included the following provisions:

> 6.    The Property Owners on the one hand; and
> Dring/Asaro on the other hand do hereby release the
> other party and such party's predecessors in title,
> successors and assigns from any and all claims arising
> out of or relating to the Lawsuit and the Western Shore
> Strip including but not limited to claims for
> compensatory damages, punitive damages, trespass,
> attorneys fees, or costs of court.
>
> 9.    This agreement shall not constitute a bar against
> or release of any existing or future rights, claims or
> causes of action held by or accruing in favor of
> Dring/Asaro, except to the extent specifically released
> or to be dismissed as provided by this Agreement.

(Doc. 1-20, ¶¶ 6,9).

Nonetheless, the 2006 Settlement Agreement did not prove to be the conclusion of the parties' grievances. Indeed, the Agreement was the subject of further litigation before this Court in *Gillespie, et al. v. Dring*, 3:15-CV-00950-ARC (commenced, May 15, 2015), where the Property Owners, as plaintiffs, made claims for prescriptive easements, among other issues, against Dring and Asaro, as defendants, concerning the Western Shore Strip. The Court, however, ultimately ruled the 2006 Settlement Agreement barred the Property Owners' prescriptive easement claims. *See Gillespie v. Dring*, 350 F. Supp. 3d 333, 335 (M.D. Pa. 2018), *aff'd*, No. 19-2073, 2022 WL 1741888 (3d Cir. May 31, 2022). The Court reasoned that prescriptive easements over the West Shore

Parcel represented claims "relating to" the West Shore Parcel, and thus were released by paragraph 6 of the 2006 Settlement Agreement. *Gillespie*, 350 F. Supp. 3d at 339; (Doc. 1-20, ¶ 6) (releasing "any and all claims arising out of or relating to the Lawsuit and the Western Shore."). Nevertheless, while *Gillespie* helped clarify the terms of the 2006 Settlement Agreement, the holding only dismissed the Property Owners' claims; it did not dismiss the trespass and ejectment counterclaims asserted by Dring and Asaro. The *Gillespie* litigation concluded when the parties entered into another settlement agreement ("2019 Settlment Agreement"). The 2019 Settlement Agreement included the following language:

> 2.     Without releasing any of their claims for continuing trespass, Dring and Asaro hereby release [the Property Owners] for all claims arising out of any trespass over the West Shore Strip that has occurred or may occur prior to April 1, 2019.

> 3.     Dring and Asaro reserve the right to pursue trespass claims for any trespass over the West Shore Strip that may have been committed by [the Property Owners] or their successors-in-interest or successors-in-title on or after April 1, 2019, and to pursue any claims for any continuing trespass which commenced prior to that date.

> 4.     [The Property Owners] or their successors-in-interest or successors-in-title reserve the right to

defend against any trespass claims filed by Dring and Asaro or their successors-in-interest or successors-in-title for any trespass that may be committed over the west shore strip on or after April 1, 2019 and to defend against any claims for continuing trespass which commenced prior to that date.

5.     This Agreement and Release is not intended to be, nor should it be construed, as a waiver by [the Property Owners], their successors-in-interest or successors-in-title of any defenses that they may have to any trespass claim instituted by Dring and Asaro or their successors-in-interest or successors-in-title for trespass committed on or after April 1, 2019, or any claim instituted by Dring and Asaro or their successors-in-interest or successors-in-title for continuing trespass which commenced prior to that date.

6.     This Agreement and Release is not intended to be, nor should it be construed as a waiver by Dring and Asaro of any rights or claims they may have, arising out of trespass occurring on or after April 1, 2019, or for any continuing trespass which commenced prior to that date.

(Doc. 47-1, ¶¶ 2–6).

Unfortunately, the 2019 Settlement Agreement did not settle the parties' grievances, particularly concerning the interpretation of the 2006 Settlement Agreement. The plaintiffs commenced this action on September 21, 2023, filing trespass and ejectment claims against the Property Owners in addition to a request for declaratory judgment and

injunctive relief. (Doc. 1). An amended complaint was filed on July 15, 2024. (Doc. 60). The plaintiffs contend that the Property Owners have "wrongly possessed, traversed and/or constructed structures upon the land … owned in fee by Plaintiffs … without the permission of Plaintiffs" and without "any lease, assignment or agreement." (Doc. 60, at 66). The Property Owners have filed two different motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, claiming that the 2006 Agreement bars the plaintiffs' claims, and even if not, those claims are barred by the doctrine of judicial estoppel. (Doc. 61; Doc. 62). The parties have briefed the matter (Doc. 63; Doc. 64; Doc. 67; Doc. 71; Doc. 72), and it is now ripe for review.

## II.   Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir.

2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## III.   Discussion

The interpretation of the 2006 Settlement Agreement has been at

the heart of the parties' previous contentions. Indeed, the current case before the Court proves no different, as the dispute surrounds the interpretation of the release of claims set forth in paragraph 6 of the Settlement Agreement, which is set out as follows:

> 6.    The Property Owners on the one hand; and Dring/Asaro on the other hand do hereby release the other party and such party's predecessors in title, successors and assigns from any and all claims arising out of or relating to the Lawsuit and the Western Shore Strip including but not limited to claims for compensatory damages, punitive damages, trespass and attorneys fees, or costs of court.

(Doc. 1-20, ¶ 6). While the Court has never been "asked to consider, nor [has it decided], whether [the plaintiffs], in the [2006] Settlement Agreement, released future trespass claims against the Property Owners," *Gillespie v. Dring*, 2022 WL 1741888, at *4 (3d Cir. May 31, 2022), the Property Owners ask us to do so here by reading the release of "any and all claims arising out of or relating to the Lawsuit and the Western Shore Strip" to cover the plaintiffs' current trespass and ejectment claims. After careful consideration of the Settlement Agreement, however, we find that the 2006 Settlement Agreement only released claims relevant to the lawsuit and the Western Shore Strip up until the point of the settlement; we do not find that it barred future

claims outside of those circumstances.

### A.    The Interpretation of Paragraph 6

A property settlement for purposes of interpretation is treated the same as any other contract under Pennsylvania law. *Norfolk S. Ry. Co. v. Reading Blue Mountain & N. R. Co.*, 346 F. Supp. 2d 720, 725 (M.D. Pa. 2004) (citing *Hullett v. Towers, Perrin, Forster & Crosby, Inc.*, 38 F.3d 107, 111 (3d Cir. 1994) (citing *Arnold M. Diamond. Inc., v. Gulf Coast Trailing Co.*, 180 F.3d 518, 521 (3d Cir. 1999)). "A court's purpose in examining a contract is to interpret the intent of the contracting parties, as they objectively manifest it." *Id.* (quoting *Sanford Investment Company, Inc., v. Ahlstrom Machinery Holdings, Inc.*, 198 F. 3d 415, 421 (3d Cir. 1999) (citations omitted)). "When the terms of the contract are unambiguous, the express language of the agreement controls its meaning." *Id.* (citing *Sanford Investment Company, Inc.*, 198 F.3d at 421). "A term is ambiguous if it is susceptible to reasonable alternative interpretations." *Id.* (quoting *Sanford Investment Company, Inc.,* 198 F.3d at 421). "In determining whether a contract is ambiguous, the court is not limited to a review of the language of the document, but may also consider the context in which the contract was made." *Id.*

(quoting *Sanford Investment Company, Inc.,* 198 F.3d at 421).

Courts have generally held that "a release covers only those matters which may fairly be said to have been within the contemplation of the parties when the release was given." *Bowersox Truck Sales & Serv., Inc. v. Harco Nat. Ins. Co.,* 209 F.3d 273, 279 (3d Cir. 2000) (quoting *Restifo v. McDonald,* 426 Pa. 5, 9, 230 A.2d 199, 201 (1967)). While a release may expressly provide for the release of future claims, *see Bickings v. Bethlehem Lukens Plate,* 82 F. Supp. 2d 402, 408 (E.D. Pa. 2008) (holding that the language "ever had, now have or which they … hereafter can, shall or may have" constitutes language that bars future claims), "the general words of the release will not be construed so as to bar the enforcement of a claim which has not accrued at the date of release… so as to avoid the ever present possibility that the releasor may be overreaching."[2] *Id.* (citing *Restifo,* 230 A.2d at 201). While the record in the underlying action certainly proves extensive, we cannot locate any language concerning the possibility of any release of future

---

[2] Indeed, accepting the Property Owners' interpretation of paragraph 6 would constitute such an overreach. As the plaintiffs point out, the Property Owners' interpretation essentially "creates a property right of undefined scope, size, nature or even location – against Dring/Asaro." (Doc. 67, at 21).

claims. The Property Owners have failed to provide any evidence in their submissions of any language that expressly provides for the release of future claims, and moreover, any evidence that a release of future claims was "within the contemplation of the parties." *Bowersox Truck Sales & Serv., Inc.* 209 F.3d at 279. We note that if the parties intended to release all future claims, the 2006 Agreement would have included language specifically providing for the release of those claims. Therefore, without any indication that the Agreement intended to release future claims, we look to the express language of the Agreement as the best understanding of the intent of the parties. Upon review of that language, we find that the plain language additionally indicates that the parties did not intend to release future claims. The parties only intended to limit the release to claims up until the signing of the 2006 Agreement.[3]

Paragraph 9 of the 2006 Agreement explicitly states that the

---

[3] "Pennsylvania courts apply the "plain meaning rule" of interpretation of contracts, which assumes that the intent of the parties to an instrument is 'embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement." *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 680 (E.D. Pa. 2014) (quoting *Cnty. of Dauphin v. Fid. & Deposit Co.*, 770 F. Supp. 248, 251 (M.D. Pa. 1991).

Agreement "shall not constitute a bar against or release of any existing or future rights, claims or causes of action held by or accruing in favor of Dring/Asaro, except to the extent specifically released or to be dismissed as provided by this Agreement." (Doc. 1-20, ¶ 9). The language "shall not constitute … [a] release of any existing or *future* rights, claims or causes of action" indicates that the parties specifically considered whether the 2006 Agreement would bar future claims. Instead of including language expressly providing for the release of future claims, however, the parties did the opposite, explicitly including language to reserve the plaintiffs' rights to pursue those claims in the future.[4] Therefore, upon review of the 2006 Agreement's plain language, it seems clear that the parties unambiguously intended to only release claims brought by the 2001 Lawsuit up until the date of the 2006 Agreement, as they actively reserved the plaintiffs' future rights in that

---

[4] While probative, but not dispositive, we must also note that the parties included parallel language within the 2019 Settlement Agreement to unequivocally preserve the plaintiffs' future rights. *See* (Doc. 47-1) ("This Agreement and Release is not intended to be, nor should it be construed as a waiver by Dring and Asaro of any rights or claims they may have, arising out of trespass occurring on or after April 1, 2019, or for any continuing trespass which commenced prior to that date.").

Agreement.

## B.    The Application of Paragraph 6

In light of this analysis, we find that the plaintiffs' claims are not barred by the 2006 Agreement. There is no dispute that the plaintiffs' claims for trespass, ejectment, and declaratory judgment concern the Western Shore Strip. The plaintiffs bring these claims for trespass "upon the lands owned by Plaintiffs, namely the West Shore Parcel" (Doc. 60, ¶ 165), for the Property Owners wrongful traversing across the Strip, possession of the Strip, and construction of structures upon the Strip. (Doc. 60, ¶ 174). The plaintiffs' claims unequivocally do not, however, concern the prerequisite 2001 Lawsuit, and therefore are not barred. Here, the plaintiffs have brought only claims for the Property Owners' actions accumulating after April of 2019. (Doc 60, ¶¶ 88–95). These actions are separate from the trespass claims brought in the 2001 Lawsuit which only concerned the Property Owners' actions up until the date of the 2006 Settlement Agreement. Therefore, without any evidence indicating that the parties intended to bar the claims in the current action, we will deny the Property Owners' motions to dismiss and allow the plaintiffs to proceed with their claims based on our

finding that the 2006 Agreement did not bar future claims.

### C.    The 2019 Settlement Agreement

Although not pertinent to our interpretation of the 2006 Settlement Agreement, we must acknowledge the parties' 2019 Settlement Agreement and its role in this action as each party has identified it within their briefs. While we have found that the 2006 Settlement Agreement does not bar the plaintiffs' current claims, we note that the 2019 Settlement Agreement signed by the parties carries out this intention. Our analysis of the 2019 Settlement Agreement follows the same rules of contractual interpretation as applied to the 2006 Settlement Agreement. The 2019 Settlement Agreement states in pertinent part:

> 2.    Without releasing any of their claims for any continuing trespass, Dring and Asaro hereby release Plaintiffs for all claims arising out of any trespass over the West Shore Strip that has occurred or may occur prior to April 1, 2019.
>
> 3.    *Dring and Asaro reserve the right to pursue trespass claims for any trespass over the West Shore Strip that may be committed by Plaintiffs or their successors-in-interest or successors-in-title on or after April 1, 2019, and to pursue any claims for any continuing trespass* which commenced prior to that date.

(Doc. 47-1, ¶¶ 2,3) (emphasis added). Upon review of the Agreement, we find that it clearly and unambiguously reserves the plaintiffs' right to pursue any trespass claims for actions occurring on or after April 1, 2019, and those that have continued to occur on or after that date, against the Property Owners and their successors. These are precisely the same claims that the plaintiffs bring in the current action.

We note that the 2019 Settlement Agreement goes further by including language that supports the plaintiffs' rights to pursue these claims. First, paragraph 6 of the 2019 Agreement contains language that we have previously found that explicitly reserves the plaintiffs' future rights to pursue trespass claims. *See* (Doc. 47-1, ¶ 6) ("This Agreement and Release is not intended to be, nor should it be construed as a waiver by Dring and Asaro of any rights or claims they may have, arising out of trespass occurring on or after April 1, 2019, or for any continuing trespass which commenced prior to that date"). This language is consistent with that found in paragraph 9 of the 2006 Settlement Agreement, which we interpreted as an express intention to preserve future claims. Second, paragraph 7 of the 2019 Settlement Agreement states that "[the Property Owners] acknowledge Dring and

Asaro's ownership of the west shore strip, and that, any construction that they may perform on the west shore strip is done at their own risk." (Doc. 47-1, ¶ 7). The 2019 Agreement clearly expresses the parties' acknowledgement that the plaintiffs own the Western Shore Strip and any action(s) by the Property Owners adverse to the plaintiffs are done at their own risk.

The Property Owners contend that an interpretation allowing future trespass claims ignores the fourth and fifth paragraphs of the 2019 Settlement Agreement. (Doc. 63, at 14); (Doc. 64, at 17). That language states:

> 4. Plaintiffs or their successors-in-interest or successors-in-title *reserve the right to defend against any trespass claims filed by Dring and Asaro* or their successors-in-interest or successors-in-title for any trespass that may be committed over the west shore strip on or after April 1, 2019 *and to defend against any claims for continuing trespass* which commenced prior to that date.
>
> 5. This Agreement and Release is *not intended to be, nor should it be construed, as a waiver by Plaintiffs*, their successors-in-interest or successors-in-title *of any defenses that they may have to any trespass claim instituted by Dring and Asaro* or their successors-in-interest or successors-in-title for trespass committed on or after April 1, 2019, *or any claim instituted by Dring and Asaro* or their successors-in-interest or successors-in-title *for continuing trespass* which commenced prior

to that date.

(Doc. 47-1, ¶¶ 4,5) (emphasis added). We fail to see, however, how those paragraphs impact our assessment of the viability of the plaintiffs' claims. It is undisputed that the Property Owners reserve the right to defend against any trespass claim and that the 2019 Agreement is not intended to waive any defenses that the Property Owners may have to any trespass claim. However, our analysis in this action leads to the conclusion that the Property Owners cannot assert a defense that the 2006 Agreement bars future trespass claims. It does not impact the viability of any additional defenses brought by the Property Owners.

### D.    The Application of Judicial Estoppel

The Property Owners argue that the doctrine of judicial estoppel bars the plaintiff's claims. Judicial estoppel is an equitable doctrine that entails "the intrinsic ability of courts to dismiss an offending litigant's complaint without considering the merits of the underlying claims when such dismissal is necessary to prevent a litigant from playing fast and loose with the courts." *In re Kane*, 628 F.3d 631, 637 (3d Cir. 2010). "Though there is no rigid test for judicial estoppel, three factors inform a federal court's decision whether to apply it: there must

be (1) 'irreconcilably inconsistent positions;' (2) 'adopted ... in bad faith;' and (3) 'a showing that ... estoppel address[es] the harm and ... no lesser sanction [is] sufficient." *G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3d Cir. 2009) (quoting *Chao v. Roy's Constr., Inc.*, 517 F.3d 18-, 186 n.5 (3d Cir. 2008)) (alterations in original). "[J]udicial estoppel is appropriately applied in a narrow category of cases because it 'is an extraordinary remedy that should be employed only when a party's inconsistent behavior would otherwise result in a miscarriage of justice.'" *Dam Things from Denmark, a/k/a Troll Co. ApS, v. Russ Berrie & Co., Inc.*, 290 F.3d 548, 559 (3d Cir. 2002) (quoting *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 784 (3d Cir. 2001)). The Property Owners argue that the plaintiffs are playing "fast and loose" with the Court by arguing positions "directly contrary to arguments they made to the Court in *Gillespie v. Dring*," (Doc. 64, at 23), and litigating "claims which are directly contrary to its prior successful arguments." (Doc. 63, at 18). We do not agree with either contention.

First, the record proves that the plaintiffs' argument in *Gillespie*, and subsequently on appeal before the Third Circuit, remains

consistent with its contention before the Court in this action: the 2006 Settlement Agreement bars only prior trespass and ejectment claims. *See* (Doc. 67, at 24) (finding the plaintiffs' reply brief in *Gillespie* argued "[Property Owners] received a release of prior claims from Dring/Asaro in return for the release of prior claims against Dring/Asaro."); *see also* (Doc. 67, at 25) (finding that the plaintiffs' brief in the *Gillespie* appeal stated "[the plaintiffs] … released claims accrued to that [settlement] date including the prior trespass by [the Property Owners]"); (Doc. 67, at 2) (noting that the plaintiffs in the current case argue "The 2006 Agreement Does Not Release Future Claims."). Second, this argument is consistent with the Court's holding in *Gillespie* and now our holding here in the current action, as we have noted above. Indeed, we can find no support in the record that indicates otherwise, and the Property Owners have failed to provide any evidence supporting their contention. Therefore, we find the doctrine of judicial estoppel inapplicable to the plaintiffs' claims.

## D.    Improper Claims in Counts II and III

The Property Owners move to dismiss the plaintiffs' request for compensatory damages and punitive damages concerning the plaintiffs'

ejectment, declaratory judgment, and injunctive relief claims. (Doc. 63, at 19); (Doc. 64, at 20). The plaintiffs have failed to address this argument in their brief. The filing of a brief in opposition to a motion to dismiss that fails to respond to a substantive argument to dismiss a particular claim results in the waiver or abandonment of that claim. *See Dribelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008) (affirming district court's finding of waiver as to an argument where plaintiff had opportunity to address it in his opposition brief but failed to do so); *Levy-Tatum v. Navient Solutions, Inc.*, 183 F. Supp. 3d 701, 712 (E.D. Pa. 2016) (collecting cases); *D'angio v. Borough of Nescopeck*, 34 F. Supp. 2d 256, 265 (M.D. Pa. 1999) (finding claims waived where plaintiff failed to address defendant's argument in his brief in opposition to a motion to dismiss); *see also LM Gen. Ins. Co. v. LeBrun*, 470 F. Supp. 3d 440, 460 (E.D. Pa. 2020); *Celestial Cmty. Dev. Corp. v. City of Philadelphia*, 901 F. Supp. 2d 566, 578 (E.D. Pa. 2012). Accordingly, the plaintiffs' claims for compensatory damages and punitive damages concerning their ejectment, declaratory judgment, and injunctive relief claims will be dismissed as waived.

## IV.    Conclusion

For the following reasons, we will grant the Property Owners' motions to dismiss in part and deny the motions in part. The Property Owners' motions to dismiss will be granted concerning the plaintiffs' request for compensatory damages and punitive damages for claims of ejectment, declaratory judgment, and injunctive relief. The Property Owners' motions to dismiss will be denied as to all other counts.

An appropriate order follows.

Dated: March 28, 2025          *s/Joseph F. Saporito, Jr.*
                               JOSEPH F. SAPORITO, JR.
                               United States District Judge