IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

LORI DRING AND NANCY ASARO,
Plaintiffs

v.

MICHAEL G. ABERNATHY, et al.,
Defendants

---

NO. 3:23-CV-01576

JUDGE SAPORITO

---

PLAINTIFFS' BRIEF IN RESPONSE AND OPPOSITION TO DEFENDANTS'
MOTIONS FOR RECONSIDERATION AND CERTIFICATION

---

DAVOLOS LAW GROUP
Philip A. Davolos, III, Esquire
Attorney I.D. #210225
PO Box 118
Clarks Summit, Pennsylvania 18411-0188
570-362-3492
pdavolos@davoloslaw.com
*Attorneys for Plaintiffs,*
*Lori Dring and Nancy Asaro*

ROTHENBERG & CAMPBELL
Howard A. Rothenberg, Esquire
(Id.# 38804)
Ryan P. Campbell, Esquire
(Id.# 317838)
345 Wyoming Avenue, Ste. 210
Scranton, PA 18503
p. 570.207.2889
HRLaw01@gmail.com
HRLaw04@gmail.com
*Attorneys for Plaintiffs,*
*Lori Dring and Nancy Asaro*

944635.1

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES……………………………………….    ii

I.    INTRODUCTION ………………………………………..    1

II.    BACKGROUND ………………………………………...    2

III.        ARGUMENT……………………………………….    8

  A. The Court Should Deny Defendants' Motion for Reconsideration,
  Because the Court Did Not Err as to Fact or Law in Denying
  Defendants' 12(b)(6) Motion, and No Manifest Injustice Exists ……….    8

    1.  The Court properly analyzed and construed the 2006 Agreement
    and the Court did not "fail[] to properly consider the context"
    when it held that the 2006 Agreement released only prior claims
    and does not release all future claims…………………………    10

    2.  The Court properly interpreted the 2006 Agreement and
    did not "fail[] to give effect to every word and clause
    in the release language in the 2006 [] Agreement"……………………    15

    3.  Reconsideration should be denied, because the Opinion is internally
    consistent and consistent with both Judge Caputo's 2018 Opinion
    in Gillespie and Third Circuit's 2022 Opinion…………………………16

  B. The Court Should Not Certify the Opinion for Appeal and Needlessly
  Delay the Resolution of this Matter, Because Defendants Fail
  to Satisfy the Elements Required to Justify Certification ………………    19

    1.  Substantial grounds for difference of opinion do not exist, because
    substantial grounds require genuine doubt or conflicting precedent
    as to the correct legal standard…………………………………… 20

    2.  Interlocutory review will styme the advancement of this matter and
    materially delay the ultimate termination of this litigation…………… 22

IV. CONCLUSION……………………………………………… 23

i

# <u>TABLE OF AUTHORITIES</u>

**Case**                                                                                              **Page**

<u>Arnold M. Diamond. Inc., v. Gulf Coast Trailing Co.,</u> 180 F.3d 518, 521
(3d Cir. 1999)…………………………………………………………………..11

<u>Asaro v. Abernathy</u>, 3:23-CV-01576, 2025 WL 950851
(M.D. Pa. Mar. 28, 2025) …………………………………………………... *passim*

<u>Bickings v. Bethlehem Lukens Plate,</u> 82 F.Supp.2d 402 (E.D. Pa. 2000)………12,15

<u>Bowersox Truck Sales & Serv., Inc. v. Harco Nat. Ins. Co.,</u>
209 F.3d 273 (3d Cir. 2000)..………………………………………………12,13,18

<u>Brown v. Clemens</u>, 3:22-CV-01067, 2023 WL 9016391
(M.D. Pa. Dec. 13, 2023) …………………………………………………………..9

<u>D'Angio v. Borough of Nescopeck</u>, 56 F. Supp. 2d 502 (M.D. Pa. 1999)...………10

<u>Gillespie v. Dring</u>,19-2073, 2022 WL 1741888 (3d Cir. May 31, 2022)………..7,16

<u>Gillespie v. Dring</u>, 350 F. Supp. 3d 333 (M.D. Pa. 2018), <u>aff'd</u>, 19-2073,
2022 WL 1741888 (3d Cir. May 31, 2022) …………………………...1,5,7,10,16

<u>Hullett v. Towers, Perrin, Forster & Crosby, Inc.</u>, 38 F.3d 107 (3d Cir. 1994)…..11

<u>Lazaridis v. Wehmer</u>, 591 F.3d 666 (3d Cir. 2010)…………………………..9

<u>Max's Seafood Café ex rel. Lou–Ann, Inc. v. Quinteros</u>, 176 F.3d 669
(3d Cir. 1999)…………………………………………………………………9

<u>Norfolk S. Ry. Co. v. Reading Blue Mountain & N. R. Co.</u>,
346 F. Supp. 2d 720, (M.D. Pa. 2004)……………………………………11

<u>Ogden v. Keystone Residence</u>, 226 F. Supp. 2d 588 (M.D. Pa. 2002)……………..9

ii

Restifo v. McDonald, 426 Pa. 5, 230 A.2d 199 (1967)……………………………12

Sanford Investment Company, Inc., v. Ahlstrom Machinery Holdings, Inc.,
198 F. 3d 415 (3d Cir. 1999)……………………………………………………….11

York Int'l Corp. v. Liberty Mut. Ins. Co., 140 F. Supp. 3d 357
 (M.D. Pa. 2015)…………………………………………………………………9

944635.1

**INTRODUCTION**

There is no basis for reconsideration of the March 28, 2025, Opinion[1] that correctly denied Defendants' Rule 12(b)(6) Motions to Dismiss Plaintiffs' Amended Complaint ("Am.Comp."). Likewise, Defendants fail to state a valid basis that could justify the extraordinary relief of certification for interlocutory appeal.[2] The Court correctly held, *inter alia*, that the partial settlement agreement of August 28, 2006 ("2006 Agreement") only released Plaintiffs' prior, existing claims and did not release Plaintiffs' future claims, such as those brought against Defendants in the instant action.[3] The Court correctly held that the plain language of the 2006 Agreement (with specific reference to paragraphs 6 and 9) only released prior, then-existing claims did not release Asaro/Dring's future claims. Moreover, the language of paragraph 9 expressly preserves future claims by Asaro/Dring, such as those claims brought in the instant litigation. The Court found the language of the 2006 Agreement dispositive. However, at the urging of Defendants the Court also looked

---

[1] ECF 81, Asaro v. Abernathy, 3:23-CV-01576-JFS, 2025 WL 950851 (M.D. Pa. Mar. 28, 2025) ("Opinion").

[2] Defendants are Michael G. Abernathy, Mary B. Abernathy, Christa Donati Dougher, Brian R. Dougher, Judith Tadder, Allan L. Tadder, Dennis John Dougherty, Mary Elizabeth Emmel and William J. Egan, Jr., Trustees under the Irrevocable Living Trust Agreement of Elizabeth O'Hara Kelly dated June 6, 2002, and William J. Egan (hereinafter "Defendants").

[3] Plaintiffs are Nancy Asaro and Lori Dring ("Plaintiffs" or "Asaro/Dring").

1

944635.1

at the record in the decades-long litigation between Defendants and Asaro/Dring and correctly held that Defendants failed to provide any evidence that a release of future claims was "within the contemplation of the parties" to the 2006 Agreement. Opinion, p. 12. The Court also correctly denied dismissal based on Defendants' judicial estoppel arguments, and held in part, as follows:

> …the record proves that [Asaro/Dring's] argument in *Gillespie*, and subsequently on appeal before the Third Circuit, remains consistent with [their] contention before the Court in this action: the 2006 Settlement Agreement bars only prior [ …] claims.

Opinion, p. 18-19.

There is no basis for reconsideration or certification and the Defendants' Motion should be denied in its entirety.

## **BACKGROUND**

The Opinion provides a succinct summary of the particularly salient aspects of the decades-long, multi-suit, history of the dispute between, *inter alia*, Plaintiffs and Defendants. Opinion, p. 2-7. "The current action before the Court represents only a singular step in a long-standing dispute over property rights at Lake Ariel in Wayne County, Pennsylvania." Opinion, p. 1. Historically, the dispute involves three primary groups: (1) Asaro/Dring, (2) non-party, Ariel Land Owners, Inc. ("ALO"); and (3) those, such as Defendants in this case, who own or lease lots and cottages on

2

West Shore Drive near the western shore of Lake Ariel – occasionally referred to as property owners. Opinion, p. 1-2.

Asaro/Dring commenced this action because Defendants use and/or occupy Plaintiffs' real property, known as the West Shore Parcel ("WSP"), without permission and without right or privilege. Plaintiffs' Amended Complaint ("Am.Comp.") states three valid causes of action against the Defendants: (1) Trespass, (2) Declaratory Judgment/Injunctive Relief, and (3) Ejectment.

The WSP is a roughly two-acre parcel of land, with an average width of fourteen to fifteen feet, that stretches for approximately one mile along the western shore of Lake Ariel. The WSP is contiguous to the aggregate eighty-nine acres that Plaintiffs own in fee on the western shore of Lake Ariel. See, Am.Comp. at ¶¶1-9, and Opinion, p. 1-3.

By 1999, Plaintiffs had acquired over eighty contiguous acres of land along the western shore of Lake Ariel. In 1999, "ALO sued Plaintiffs in the Court of Common Pleas of Wayne County to prevent the Plaintiffs from accessing the waters of Lake Ariel from their property." Opinion, p. 2. That action was removed to this District Court. Thereafter, Asaro/Dring purchased the 1.9 acre parcel defined above as the WSP that is at the heart of the instant action. ALO and a group of so-called property owners with interests in parcels to the west of West Shore Drive near the

3

western shore of Lake Ariel brought yet another suit against Asaro/Dring in Wayne County for, *inter alia*, prescriptive easements over the WSP.

That second state court action was stayed and removed to this Court where it was consolidated with the ALO's already pending suit against Asaro/Dring. "The consolidated action ('2001 Lawsuit') featured numerous claims and counterclaims, two of which" were germane to the Court's analysis in denying the Defendants' Rule 12(b)(6) Motions in the matter *sub judice*. Opinion, p. 3. In the 2001 Lawsuit, Asaro/Dring brought counterclaims against the property owners for trespass – the wrongful trespass upon property owned in fee by Asaro/Dring, i.e., the WSP. The property owners, on the other hand, brought prescriptive easement claims against Asaro/Dring for possession, traversing, and construction of structures on the WSP. Id. Prior to trial, however, all three parties to the 2001 Lawsuit (ALO, Asaro/Dring, and the property owners) entered into a partial settlement agreement, the 2006 Agreement. Opinion, p. 3.

Unfortunately, the 2006 Agreement became the subject of further litigation. In 2015, a group of property owners, organized and represented by the same counsel as ALO, filed suit against Asaro/Dring in a matter styled, Gillespie, et al. v. Dring, 3:15-cv-00950- ARC ("Gillespie"). In Gillespie, the "Gillespie Plaintiffs" brought various claims all aimed at using or possessing the WSP. Gillespie Plaintiffs brought claims for prescriptive easements and claims seeking to compel Asaro/Dring to

4

convey written easements over the WSP to each individual property owner. In

Gillespie, Asaro/Dring counterclaimed for, *inter alia*, trespass. In Gillespie, both this

Court and the Third Circuit held, *inter alia*, that (a) the 2006 Agreement released the

property owners/Gillespie Plaintiffs' claims for prescriptive easements and that (b)

the 2006 Agreement did not require, and in fact could not be used to compel,

Asaro/Dring to provide written easements directly to individual property

owners/Gillespie Plaintiffs. Gillespie v. Dring, 350 F. Supp. 3d 333, 338 (M.D. Pa.

2018), aff'd, 19-2073, 2022 WL 1741888 (3d Cir. May 31, 2022).

In October 2018, late Hon. A. Richard Caputo, U.S. Dist. Judge ("Judge

Caputo") entered summary judgement dismissing all of the claims brought by

Gillespie Plaintiffs. Id. However, when Judge Caputo entered summary judgment

against Gillespie Plaintiffs on all counts, Asaro/Dring's counterclaims remained, and

the matter was set for trial on those counterclaims.

Thus, "while Gillespie helped clarify the terms of the 2006 Settlement

Agreement, the holding only dismissed the Property Owners' claims; it did not

dismiss the trespass and ejectment counterclaims asserted by" Asaro/Dring.

Opinion, p. 5. Rather, Gillespie "concluded when the parties entered into another

settlement agreement" (the "2019 Agreement"). Id.

The 2019 Agreement, again, did not resolve all of the differences between the

parties, and like the 2006 Agreement did not release future claims by Asaro/Dring.

5

It did, however, release claims for trespass prior to April 1, 2019, and again reserved and preserved future claims for trespass as follows:

> 3. Dring and Asaro reserve the right to pursue trespass claims for any trespass over the West Shore Strip that may have been committed by [the Property Owners] or their successors-in-interest or successors-in-title on or after April 1, 2019, and to pursue any claims for any continuing trespass which commenced prior to that date.

Opinion, p. 6, quoting ¶ 3 of 2019 Agreement.

Plaintiffs commenced this action in September 2023 and filed the Am.Comp. in July 2024. The Am.Comp. states claims for trespass after April 1, 2019, and continuing trespass as expressly reserved and preserved in the 2019 Agreement, in addition to claims for ejectment, and declaratory and injunctive relief. As a fundamental matter, these claims are not the same claims brought in the 2001 Lawsuit – the claims brought in this action did not even exist as of August 28, 2006. Defendants have not articulated any materially meaningful contrary arguments.

Asaro/Dring have never wavered in their position that the 2006 Agreement only released prior claims and did not release *future* claims for trespass and/or other *future* claims they may have related to the WSP. The plain language of the 2006 Agreement, let alone everything in the record in this decades-long dispute, supports Asaro/Dring's rational, logical, and consistent position concerning the temporally limited release contained in the 2006 Agreement.

944635.1

Unfortunately, the Defendants continually ask the District Court and the Third Circuit to rewrite the 2006 Agreement to suit their ever-changing legal theory of the day. In 2018, Judge Caputo, refused to rewrite the 2006 Agreement and held "…I cannot rewrite the agreement to shift the forfeiture from the Property Owners to Dring when ALO is the only party in breach." Gillespie, 350 F. Supp. 3d 333, 338 (M.D. Pa. 2018), aff'd, 19-2073, 2022 WL 1741888 (3d Cir. May 31, 2022). In 2022, the Third Circuit likewise refused to rewrite the 2006 Agreement to benefit the Defendants, when it held, in part:

> While the Property Owners appeal to the principles of equity, [], we cannot, as Judge Caputo succinctly explained, "rewrite the agreement to shift the forfeiture from the Property Owners to Dring when ALO is the only party in breach." [] Because there is no disputed issue of material fact that Dring's obligation to grant the Property Owners an easement over the [WSP] was contingent on ALO's performance, we will affirm.

Gillespie v. Dring, 2022 WL 1741888, at *4 (3d Cir. May 31, 2022).

Now, in 2025, with the Opinion of March 28, this Honorable Court, again refused to rewrite the 2006 Agreement to suit the Defendants' latest, and entirely inconsistent, legal theory. Judge Caputo wouldn't rewrite the 2006 Agreement. The Third Circuit wouldn't rewrite the 2006 Agreement. Again, this Court just 28 days ago, refused to rewrite the 2006 Agreement to suit the Defendants' latest legal theory. Even so, Defendants now seek reconsideration and/or to prematurely take yet another appeal, with the aim of asking the Court of Appeals to rewrite the 2006

7

Agreement to suit their current, inconsistent, legal theory of the day. There is no basis for the relief sought by Defendants and their Motion should be denied entirely.

## ARGUMENT

**A. The Court Should Deny Defendants' Motion for Reconsideration, Because the Court Did Not Err as to Fact or Law in Denying Defendants' 12(b)(6) Motions, and No Manifest Injustice Exists.**

Defendants' Motion for Reconsideration should be denied, because reconsideration is not to be used to reargue matters already argued before and disposed of by the Court. Here, Defendants' request for reconsideration is a textbook example of an attempt by a dissatisfied party to relitigate a point of disagreement with the Court. Defendants simply don't like that the Court did not rule in their favor. That is not a basis for reconsideration.

"A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." Brown v. Clemens, 3:22-CV-01067, 2023 WL 9016391, at *1 (M.D. Pa. Dec. 13, 2023) (Saporito, U.S.M.J.), quoting Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002). Reconsideration should only be granted when (1) there has been an intervening change in the law; (2) there is new evidence that was not previously available; and (3) there is a mistake of law or fact that must be corrected to prevent a manifest injustice. Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010); Max's Seafood Café ex rel. Lou–Ann,

944635.1

Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999); and Brown, 3:22-CV-01067, 2023 WL 9016391, at *1 (M.D. Pa. Dec. 13, 2023). "Likewise, reconsideration motions may not be used to raise new arguments or present evidence that could have been raised prior to the entry of judgment."  Brown, 3:22-CV-01067, 2023 WL 9016391, at *1 (M.D. Pa. Dec. 13, 2023), quoting York Int'l Corp. v. Liberty Mut. Ins. Co., 140 F. Supp. 3d 357, 361 (M.D. Pa. 2015). "Reconsideration of judgment is an extraordinary remedy; therefore, such motions are to be granted sparingly." Id quoting D'Angio v. Borough of Nescopeck, 56 F. Supp. 2d 502, 504 (M.D. Pa. 1999).

Here, there has not been a change in the law, there is no new evidence, and there is no error of law or fact. Thus, there is clearly no manifest injustice. The courts would grind to a halt if manifest injustice, in the context of *denial* of a 12(b)(6) motion, were found to exist simply because a disappointed party disagrees with a court's well-reasoned, factually and legally accurate, opinion. The Defendants simply attempt to relitigate the same issues by repackaging (or in some instances just repeating) the same unpersuasive arguments already rejected by the Court.

1. **The Court properly analyzed and construed the 2006 Agreement and the Court did not "fail[] to properly consider the context" when it held that the 2006 Agreement released only prior claims and does not release all future claims.**

944635.1

The Defendants' arguments concerning the Court's analysis of the "context" of the release contained in the 2006 Agreement are misplaced or simply wrong. The Court very clearly held, in part, as follows:

> While the Court has never been "asked to consider, nor [has it decided], whether [the plaintiffs], in the [2006] Settlement Agreement, released future trespass claims against the Property Owners," *Gillespie v. Dring*, 2022 WL 1741888, at *4 (3d Cir. May 31, 2022), the Property Owners ask us to do so here by reading the release of "any and all claims arising out of or relating to the Lawsuit and the Western Shore Strip" to cover the plaintiffs' current trespass and ejectment claims. After careful consideration of the Settlement Agreement, however, we find that the 2006 Settlement Agreement only released claims relevant to the lawsuit and the Western Shore Strip up until the point of the settlement; we do not find that it barred future claims outside of those circumstances.

Opinion pp. 9-10.

The Court correctly interpreted paragraph 6 of the 2006 Agreement and did consider the "context" to arrive at the correct conclusion, albeit a conclusion that the Defendants do not like. The Court's analysis was proper and thorough. The Court's discussion of the law applicable to interpreting the 2006 Agreement is explained in detail at pages 10-13 of the Opinion. The Court explained that the 2006 Agreement is subject to analysis under the normal principles of contract interpretation under

10

Pennsylvania law. Opinion, p. 10. [4] The Court's purpose in examining the 2006 Agreement was to interpret the intent of the parties as they objectively manifested it.[5] If the language of the 2006 Agreement is unambiguous then the language controls.[6] The Court explained that "[i]n determining whether a contract is ambiguous, the court is not limited to a review of the language of the document, but may also consider the context in which the contract was made." Opinion, p. 10, (citing Norfolk S. Ry. Co., 346 F. Supp. 2d 720 at 725, quoting Sanford Investment Company, Inc., 198 F.3d at 421).

Indeed, the Court expounded on the importance of context, because "a release covers only those matters which may fairly be said to have been within the contemplation of the parties when the release was given." Opinion, p. 11 (quoting Bowersox Truck Sales & Serv., Inc. v. Harco Nat. Ins. Co., 209 F.3d 273, 279 (3d Cir. 2000) (quoting Restifo v. McDonald, 426 Pa. 5, 9, 230 A.2d 199, 201 (1967)).

The Court even provided analysis of the type of language, in context, that would have manifested the intent to release future claims – and expressly found it

---

[4] Opinion at p. 10 – citing Norfolk S. Ry. Co. v. Reading Blue Mountain & N. R. Co., 346 F. Supp. 2d 720, 725 (M.D. Pa. 2004) (citing Hullett v. Towers, Perrin, Forster & Crosby, Inc., 38 F.3d 107, 111 (3d Cir. 1994) (citing Arnold M. Diamond. Inc., v. Gulf Coast Trailing Co., 180 F.3d 518, 521 (3d Cir. 1999)).

[5] Opinion at p. 10 citing Norfolk S. Ry. Co., 346 F. Supp. 2d 720, 725 (M.D. Pa. 2004) (quoting Sanford Investment Company, Inc., v. Ahlstrom Machinery Holdings, Inc., 198 F. 3d 415, 421 (3d Cir. 1999)

[6] Opinion at p. 10 citing, Id.

944635.1

lacking from the 2006 Agreement. See, Opinion at p. 11. The Court explained that language such as "'ever had, now have or which they … hereafter can, shall or may have' constitutes language that bars future claims". <u>Id</u> quoting <u>Bickings v. Bethlehem Lukens Plate</u>, 82 F. Supp. 2d 402, 408 (E.D. Pa. 2008). The Court also stated the rule that the general words of release will not be construed to bar the enforcement of a claim that has not accrued at the date of release, because this would result in "overreaching". This overreaching is exactly what the Defendants attempt to accomplish here. In applying these principles of contract interpretation to dispose of the Defendants' 12(b)(6) Motions, the Court aptly noted in footnote 2 of the Opinion that:

> Indeed, accepting the Property Owners' interpretation of paragraph 6 would constitute such an overreach. As the plaintiffs point out, the Property Owners' interpretation essentially "creates a property right of undefined scope, size, nature or even location – against Dring/Asaro." (Doc. 67, at 21).

Opinion, p. 11, FN2

In considering the context of the 2006 Agreement, the Court further held that:

> While the record in the underlying action certainly proves extensive, we cannot locate any language concerning the possibility of any release of future claims. The Property Owners have failed to provide any evidence in their submissions of any language that expressly provides for the release of future claims, and moreover, any evidence that a release of future claims was "within the

12

contemplation of the parties." <u>Bowersox Truck Sales & Serv., Inc.</u> 209 F.3d at 279.

Opinion, p. 12.

Here, the language of the 2006 Agreement is not of the sort used to release all future claims. Also, Defendants were utterly unable to come up with any "context" or contextual support for the wholly unsubstantiated position that the 2006 Agreement released future claims. Opinion, p. 12. The record in the underlying litigation is replete with context that defeats the Defendants' release of all claims argument in its entirety. Moreover, the Court properly applied paragraph 9 of the 2006 Agreement.

> The language "shall not constitute … [a] release of any existing or future rights, claims or causes of action" indicates that the parties specifically considered whether the 2006 Agreement would bar future claims. Instead of including language expressly providing for the release of future claims, however, the parties did the opposite, explicitly including language to reserve the plaintiffs' rights to pursue those claims in the future.

Opinion, p. 12.

In applying context to the 2006 Agreement, the Court held that:

> The plaintiffs' claims unequivocally do not, however, concern the prerequisite 2001 Lawsuit, and therefore are not barred. Here, the plaintiffs have brought only claims for the Property Owners' actions accumulating after April of 2019. (Doc 60, ¶¶ 88–95). These actions are separate from the trespass claims brought in the 2001 Lawsuit which only concerned the Property Owners' actions up until the date of the 2006 Settlement Agreement. Therefore, without any evidence indicating that the parties

13

944635.1

> intended to bar the claims in the current action, we will
> deny the Property Owners' motions to dismiss and allow
> the plaintiffs to proceed with their claims based on our
> finding that the 2006 Agreement did not bar future claims.

Opinion, p. 14.

**2. The Court properly interpreted the 2006 Agreement and did not "fail[] to give effect to every word and clause in the release language in the 2006 [] Agreement."**

Defendants' arguments concerning the words "successors and assigns" as somehow requiring an interpretation of the 2006 Agreement that includes the release of future claims, beyond the date of its execution, makes no sense and is an attempt to manufacture an argument on the same subject, already rejected by the Court. Without citation to a scintilla of apposite legal authority, Defendants claim that the inclusion of the words "successors and assigns" somehow transforms the release of prior claims by Asaro/Dring contained in the 2006 Agreement into a release of all claims, including future claims. This makes no sense. Defendants cite no legal authority for this proposition, because none exists.

The Court has explained the language of a comprehensive future release and found it lacking with regard to the 2006 Agreement. See Opinion at p. 10 and the Court's discussion of Bickings, 82 F. Supp. 2d at 408, describing the language required to release future claims "'ever had, now have or which they … hereafter can, shall or may have' constitutes language that bars future claims". Id.

14

944635.1

Reconsideration is not meant to relitigate those issues already decided by the Court. Defendants' argument concerning successors and assigns is simply contrary to Pennsylvania law, the law of contract, and common sense. The Defendants' arguments concerning paragraph 9 of the 2006 Agreement are likewise unsubstantiated. The Court very clearly explained that if the parties had intended for the 2006 Agreement to release Asaro/Dring's future claims – the language to do so could easily have been included in the document, but it was not. Moreover, paragraph 9 of the 2006 Agreement, expressly reserves the right of Asaro/Dring to bring future claims.

> The language "shall not constitute … [a] release of any existing or future rights, claims or causes of action" indicates that the parties specifically considered whether the 2006 Agreement would bar future claims. Instead of including language expressly providing for the release of future claims, however, the parties did the opposite, explicitly including language to reserve the plaintiffs' rights to pursue those claims in the future. Therefore, upon review of the 2006 Agreement's plain language, it seems clear that the parties unambiguously intended to only release claims brought by the 2001 Lawsuit up until the date of the 2006 Agreement, as they actively reserved the plaintiffs' future rights in that Agreement.

Opinion, p. 13, explaining the interpretation of paragraph 9 of the 2006 Agreement.

**3. Reconsideration should be denied, because the Opinion is internally consistent and consistent with both Judge Caputo's 2018 Opinion in <u>Gillespie</u> and Third Circuit's 2022 Opinion.**

First, the 2019 Agreement is attached to the Plaintiffs' Amended Complaint, and as such is part of the record. Second, the Defendants made specific arguments in their Motions to Dismiss that required the Court to analyze the interplay, if any, between the 2019 Agreement and the 2006 Agreement.[7] The Court didn't "buttress" its opinion with reference to the 2019 Agreement, rather it rejected the arguments that Defendants raised about the 2019 Agreement.

> Although not pertinent to our interpretation of the 2006 Settlement Agreement, we must acknowledge the parties' 2019 Settlement Agreement and its role in this action as each party has identified it within their briefs.

Opinion, p. 15.

Third, the Court held that the 2006 Agreement is unambiguous in that it does not release future claims by Plaintiffs such as those brought in this lawsuit. See Opinion, p. 9-18. The Defendants invited the Court to consider other "evidence" when they attached numerous Exhibits to their 12(b)(6) Motions. See, ECF 62-1 to 62-6, Exhibits "A"-"F" to Motion to Dismiss. These documents are not part of the Am.Comp., and yet the Defendants asked the Court to consider same in ruling on their Motions.

_____

[7] "The Property Owners contend that an interpretation allowing future trespass claims ignores the fourth and fifth paragraphs of the 2019 Settlement Agreement. (Doc. 63, at 14); (Doc. 64, at 17)." Opinion, p. 17.

944635.1

While the record in the underlying action certainly proves extensive, we cannot locate any language concerning the possibility of any release of future claims. The Property Owners have failed to provide any ***evidence*** in their submissions of any language that expressly provides for the release of future claims, and moreover, any ***evidence*** that a release of future claims was "within the contemplation of the parties." <u>Bowersox Truck Sales & Serv., Inc.</u> 209 F.3d at 279. We note that if the parties intended to release all future claims, the 2006 Agreement would have included language specifically providing for the release of those claims. Therefore, without any indication that the Agreement intended to release future claims, we look to the express language of the Agreement as the best understanding of the intent of the parties. Upon review of that language, we find that the plain language additionally indicates that the parties did not intend to release future claims.

Opinion, p. 11-12.

The plaintiffs' claims unequivocally do not, however, concern the prerequisite 2001 Lawsuit, and therefore are not barred. Here, the plaintiffs have brought only claims for the Property Owners' actions accumulating after April of 2019. (Doc 60, ¶¶ 88–95). These actions are separate from the trespass claims brought in the 2001 Lawsuit which only concerned the Property Owners' actions up until the date of the 2006 Settlement Agreement. Therefore, without any ***evidence*** indicating that the parties intended to bar the claims in the current action, we will deny the Property Owners' motions to dismiss and allow the plaintiffs to proceed with their claims based on our finding that the 2006 Agreement did not bar future claims.

Opinion, p. 14-15.

17

944635.1

Clearly, the Court considered the context of the 2006 Agreement and even considered the various documents that the Defendants included from the record in the 2001 Lawsuit and <u>Gillespie</u> and came to the inevitable conclusion that nothing in the 2006 Agreement and/or the record from any of the prior litigation supports Defendants' contention that the 2006 Agreement released future claims. The Court read the plain meaning of the 2006 Agreement and considered the 2006 Agreement in context and came to the correct conclusion. Defendants just don't like it.

Finally, the Court's Opinion is entirely consistent with the holding in <u>Gillespie</u>. The Opinion states: "Second, this argument [that the 2006 Agreement does not bar future claims by Asaro/Dring] is consistent with the Court's holding in <u>Gillespie</u> and now our holding here in the current action, as we have noted above." Opinion, p. 20. The bald assertion by Defendants that <u>Gillispie</u> is inconsistent with the Court's well-reasoned Opinion here is meaningless.

**B. The Court Should Not Certify the Opinion for Appeal and Needlessly Delay the Resolution of this Matter, Because Defendants Fail to Satisfy the Elements Required to Justify Certification.**

**1. Substantial grounds for difference of opinion do not exist, because substantial grounds require genuine doubt or conflicting precedent as to the correct legal standard.**

A substantial ground for difference of opinion does not mean that a litigant disagrees with the Court's application of the law to the facts. Rather, for "substantial

18

grounds" for difference of opinion to exist, there must be "genuine doubt or conflicting precedent as to the correct legal standard." <u>Cuttic v. Crozer-Chester Med. Ctr.</u>, 806 F.Supp.2d 796, 804–05 (E.D. Pa. 2011). Defendants cite <u>Cuttic</u>, however that case completely undermines Defendants' argument. Here, there is no conflicting precedent among the District Courts or within the Circuit Courts as to the proper legal standard for contract interpretation under Pennsylvania law. Moreover, there are no conflicting opinions at issue in this case. There is absolutely no conflict whatsoever between the 2018 Opinion in <u>Gillespie</u> and the Court's Opinion of March 28 in the instant matter.

## 2. Interlocutory review will styme the advancement of this matter and materially delay the ultimate termination of this litigation.

While the issue of contract interpretation is a question of law, that question of law need not be reviewed at this juncture. Certification, if granted, would cause further delay, and the potential for numerous appeals, given that interlocutory appeal very likely would not even prove dispositive of all claims. Defendants have caused significant procedural delays in this matter already. Defendants have no interest in advancing this matter to a speedy, just and proper resolution. It would seem that Defendants want this matter to progress as slowly as possible.

Plaintiffs commenced this matter in September 2023. Defendants filed Motions to Dismiss on December 5, 2023. The matter was scheduled for a Rule 16 Conference before the Hon. Malachy E. Mannion, U.S.D.J. ("Judge Manion"). The

944635.1

Rule 16 Conference did not happen. On January 19, 2024, two days after Judge Mannion entered an order of recusal (ECF 29), the Defendants filed a Motion to Stay Discovery (ECF 30), on the alleged basis that they were likely to win their 12(b)(6) Motions to Dismiss. The matter was assigned to the Hon. Jennifer P. Wilson, U.S.D.J. ("Judge Wilson"). Judge Wilson scheduled, but did not convene a Rule 16 Conference, and Judge Wilson's Chambers indicated that the matter would likely be transferred to a Judge in Scranton. The matter was not transferred to Scranton.

However, on February 8, 2024, Judge Wilson entered an Order Staying Discovery (ECF 43). From that day forward, and before, Defendants refused to participate in discovery. Thus, since September 2023 no discovery has taken place. The February 8, 2024, Order Staying Discovery was not lifted until March 28, 2025.

All this delay at urging of Defendants, who sought and obtained an Order Staying Discovery, in part by insisting that they were likely to prevail on legal theories ultimately rejected by the Court over a year later. The stay and the delays caused by Defendants should not be allowed to continue.

The general rule is and has always been that appeals should be taken only from final judgments. 28 U.S.C. § 1291. Now Defendants ask this Court to certify the Opinion for review by the Third Circuit, which if granted would result in a further stay of the proceedings in this Court and would not in all likelihood be final or the last appeal taken by the Defendants. The two cases cited by Defendants – one a

944635.1

securities class action and the other an anti-trust matter, both involved novel questions of federal law that were unresolved by third circuit precedent. Those matters did not involve well established rules of contract interpretation.

## <u>CONCLUSION</u>

For all of the foregoing reasons, it is respectfully submitted that the Defendants' Motion and the relief requested should be denied entirely.

Respectfully submitted,

*/s/ Philip A. Davolos III*
PHILIP A. DAVOLOS, III, ESQUIRE
Attorney I.D. #210225
DAVOLOS LAW GROUP
PO BOX 188
Clarks Summit, Pennsylvania 18411-0188
570-362-3492
pdavolos@davoloslaw.com
*Attorneys for Plaintiffs,*
*Lori Dring and Nancy Asaro*

AND

ROTHENBERG & CAMPBELL
Howard A. Rothenberg (Id.# 38804)
Ryan P. Campbell (Id.# 317838)
345 Wyoming Avenue, Ste. 210
Scranton, PA 18503
p. 570.207.2889
f. 570.207.3991
HRLaw01@gmail.com
HRLaw04@gmail.com
*Attorneys for Plaintiffs,*
*Nancy Asaro and Lori Dring*

21

## LOCAL RULE 7.8(b)(2) CERTIFICATION

Counsel hereby certifies that the PLAINTIFFS' BRIEF IN RESPONSE AND OPPOSITION TO DEFENDANTS' MOTIONS FOR RECONSIDERATION AND CERTIFICATION contains 4,983 words according to the word processing system used to prepare the Brief.


BY:     _/s/ Philip A. Davolos III_
            Philip A. Davolos, III, Esquire

944635.1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NANCY ASARO AND LORI DRING,

        Plaintiffs,

        v.

MICHAEL G. ABERNATHY, et. al,

        Defendants.

NO. 3:23-CV-01576

JUDGE SAPORITO

## CERTIFICATE OF SERVICE

I, PHILIP A. DAVOLOS, III, hereby certify that on the 25 day of April, 2025, I caused to be served a true and correct copy of the above brief, via ECF to the following:

GeffBlake, Esquire
Blake & Walsh, LLC
436 Jefferson Avenue
Scranton, PA 18510
gblake@blakewalshlaw.com

Daniel T. Brier, Esquire
Richard L. Armezzani, Esquire
Myers, Brier & Kelly, LLP
425 Biden Street, Suite 200
Scranton, PA 18503
dbrier@mbklaw.com

23

944635.1

rarmezzani@mbklaw.com

Patrick J. Boland III, Esquire
James D. Greco, Esquire
MARSHALL DENNEHEY, P.C.
P.O. Box 3118
Scranton, PA 18505-3118
pjboland@mdwcg.com
jdgreco@mdwcg.com

Harry T. Coleman, Esquire
Owen M. Coleman, Esquire
41 N. Main Street
3rd Floor, Suite 316
Carbondale, PA 18407
(570) 282-7440
Harry@harrycolemanlaw.com


BY:   /S/ PHILIP A. DAVOLOS III
      PHILIP A. DAVOLOS, III, ESQUIRE

24

944635.1