IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

MARJORIE M. GILLESPIE, et al.,
Plaintiffs

v.

LORI DRING AND NANCY ASARO,
Defendants

---

NO. 3:15-CV-00950

JUDGE CAPUTO

---

DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

---

ROSENN, JENKINS & GREENWALD, L.L.P.

GARRY S. TAROLI, ESQUIRE
Attorney I.D. #30159
ROBERT N. GAWLAS, JR., ESQUIRE
Attorney I.D. #46608
15 South Franklin Street
Wilkes-Barre, Pennsylvania 18711-0075
(570)826-5681
(570)706-3436 – Facsimile
gtaroli@rjglaw.com
rgawlas@rjglaw.com
Attorneys for Defendants,
Lori Dring and Nancy Asaro

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES……………………………………….. ii

I.    PLAINTIFFS HAVE FAILED TO ESTABLISH A BREACH
      OF THE SETTLEMENT AGREEMENT BY DRING/ASARO…… 1

II.   PLAINTIFFS HAVE RELEASED DRING/ASARO FROM ANY
      CLAIM FOR PRESCRIPTIVE EASEMENTS……………………… 12

III.  PLAINTIFFS HAVE FAILED TO ESTABLISH SUFFICIENT
      EVIDENCE OF RECORD TO PREVAIL ON THEIR CLAIM FOR
      PRESCRIPTIVE EASEMENTS…………………………………… 16

IV.   CONCLUSION……………………………………………….. 19

944635.1

# TABLE OF AUTHORITIES

**Case**                                                                                                              **Page**

American Leasing v. Morrison Co., 308 Pa. Super. 318, 454 A2d
555 (1982)..................................................................................................... 7

Balon v. Enhanced Recovery, Inc., 316 F.R.D. 96 (M.D. Pa. 2016)................ 13, 14

Bassett v. Civil Service Comm'n of City of Phila., 514 A.2d 984
(Pa. Cmwlth. 1986)....................................................................................... 10

Blonder-Tongue Labs, Inc. v. Univ. of Ill. Found., 402 U.S. 313,
91 S. Ct. 1434 (1971) ................................................................................... 12

Columbia Med. Group, Inc. v. Herring & Roll, P.C., 829 A.2d 1184
(Pa. Super. 2003) .......................................................................................... 10

Culottas v. Ariel Land Owners, Inc., No. 137-CIVIL-2016 ...................................... 9

Feld v. Primus Technologies Corp., 97 Fed. R. Evid. Serv. 777, 2015 WL
2357082 (M.D. Pa. 2015)................................................................................ 5

Jennings v. Delaware and Hudson Canal Company, 2013 Pa. Super.,
LEXIS 3040, at *13 (Pa. Super. 2013)............................................................ 17

Kaller's, Inc. v. John J. Spencer Roofing, Inc., 565 A.2d 794
(Pa. Super. 1989) .......................................................................................... 10

Kreutzer v. Monterey County Herald Co., 560 Pa. 600, 747 A.2d 358
(2000)............................................................................................................ 15

Mifflinburg Tel., Inc. v. Criswell, 80 F.Supp. 3d 566 (M.D. Pa. 2015)........... 13, 14

Novelty Knitting Mills v. Siskind, 500 Pa. 432, 457 A.2d 502 (1983) ................. 15

Patel v. Workmen's Comp. Appeal Bd., 488 A.2d 1177 (Pa. Cmwlth. 1985)....... 10

Phillip v. Clark, 560 A.2d 777 (Pa. Super. 1989) ................................................ 10

944635.1

Robinson v. Johnson, 313 F.3d 128 (3d Cir. 2002) ................................................. 12

Safeguard Mut. Ins. Co. v. Williams, 463 Pa. 567, 345 A.2d 664 (1975).............. 10

Shaffer v. Smith, 543 Pa. 526, 673 A.2d 872 (1996).............................................. 10

Shaffer v. Smith, 648 A.2d 26 (Pa. Super. 1994)..................................................... 11

U.S. v. Catena, 500 F.2d 1319 (3d Cir. 1974)........................................................... 5

Zeglan vs. Gahagen, 812 A.2d 558 (Pa. 2002) ........................................................ 18

**Other Authorities**

Fed. R. Evid. 801(d)(2)(D) ......................................................................................... 5

Restatement (Second) of Contracts, § 227(1) (1981)................................................. 7

944635.1

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Defendants, Lori Dring and Nancy Asaro ("Dring/Asaro"), through their attorneys, Rosenn, Jenkins & Greenwald, LLP and Michael Profita, Esquire, submit this reply to the arguments made by Plaintiffs (or "Property Owners") in opposition to Defendants' Motion for Summary Judgment (the "Motion"). The Affidavit of Robert N. Gawlas, Jr., Esquire (the "Gawlas Affidavit"), with Exhibits, is being filed contemporaneously.

I.    **Plaintiffs Have Failed to Establish a Breach of the Settlement Agreement by Dring/Asaro.**

Plaintiffs argue that Dring/Asaro have failed to establish that ALO's conveyance to Dring/Asaro is a condition precedent to Dring/Asaro's conveyance of the easement to Plaintiffs. (Doc. 76, p. 8). However, Plaintiffs' argument ignores the language of the Settlement Agreement and the testimony of their own counsel, who negotiated and signed the Settlement Agreement and Amendment on behalf of Plaintiffs. (S.F. ¶¶ 10, 12, 13).

The Settlement Agreement and the Amendment contain mutually dependent requirements which must be satisfied in order for Dring/Asaro to be obligated to perform. Section 15 requires the exchange, at a mutually convenient *time*, of *all* deeds and other instruments referred to in the Settlement Agreement. Section 15 makes no provision for multiple deliveries of deeds and instruments at different

1

times. The only deeds and instruments referred to in the Settlement Agreement are the quit claim deed to ALO subject to a permanent easement in favor of Plaintiffs (Section 3) and the instruments of conveyance in favor of Dring/Asaro (Section 5). The Settlement Agreement does not refer to any other deeds or instruments, nor any deeds or instruments to be delivered to Plaintiffs. Plaintiffs fail to explain how a permanent easement could be created in their favor, if not by deed or other instrument of conveyance, and fail to point to any provision requiring conveyance of the easement prior to the exchange of all deeds and other instruments provided for at Section 15. Even if Dring/Asaro were obligated to separately convey a permanent easement in favor of Plaintiffs, that conveyance would still be subject to Section 15.

Even assuming, for argument's sake, that Section 15 is ambiguous, Dring/Asaro have in fact produced substantial, uncontradicted parol evidence, including admissions by Plaintiffs' own counsel, that the obligation to transfer the easement to Plaintiffs does not arise until the mutual exchange of all deeds and instruments provided for in Section 15.

In that regard, Plaintiffs' counsel, Joseph A. O'Brien, Esquire, admitted in his September 19, 2016 deposition that: (a) he represented both ALO and Plaintiffs in the prior action; (b) Plaintiffs were bound by the Settlement Agreement negotiated by his firm; (c) the substance of the settlement negotiations were conducted between

944635.1

him and Michael Profita, Esquire; (d) the intention of Section 3 of the Settlement Agreement was that the easement in favor of Plaintiffs was to be created in the quit claim deed to be delivered to ALO for the North Strip; and (e) Section 15 provides for the exchange of the deeds and instruments provided for in the Settlement Agreement at the same time. (See Defendants' Statement of Undisputed Material Facts (Doc. 64, ¶¶ 3 through 5, 9 through 14, and Exhibit "3" and O'Brien Dep., p. 10, l. 1-13, Ex. "3" to Gawlas Aff.).

Mr. O'Brien admitted that he did not recall any specific discussion about the first sentence of Section 3 (providing for a quit claim deed to ALO for the North Strip subject to the permanent easement in favor of the Property Owners); however, he did recall that Dring/Asaro wanted the deed to ALO to be subject to an easement in favor of the Property Owners, rather than deeding the North Strip to ALO, which would then permit the Property Owners to use the North Strip. (O'Brien Dep., p. 35, l. 3-8, 16-18). At Mr. O'Brien's recommendation, the Plaintiffs agreed to Dring/Asaro's position. (O'Brien Dep., p. 35, l. 24 through p. 36, l. 18 and p. 37, l. 22 through p. 38, l. 17).

Mr. O'Brien further acknowledged that the term "exchanged" in Section 15 meant that the parties on the one side would hand over instruments and deeds and the parties on the other side would also hand over instruments and deeds. (O'Brien Dep., p. 55, l. 21 through p. 56, l. 3).

3

Although Plaintiffs argue that the Settlement Agreement does not require one deed, it is obvious from the foregoing admissions by Mr. O'Brien that a single deed was contemplated and agreed upon by all of the parties and, in fact, is reflected in the plain language of Section 3.

Plaintiffs also contend that James J. Gillotti, Esquire, an attorney in Mr. O'Brien's law firm who apparently participated in drafting the Settlement Agreement, stated that the preferred way to consummate the transfer of the North Strip and the easement over it would be by separate deeds. However, Mr. Gillotti admitted in his deposition that he did not recall any discussion about the first sentence of Section 3 or regarding whether there would be one deed or two. (Gillotti Dep., p. 28, l. 15 through p. 29, l. 5, Ex. "4" to Gawlas Aff.). Mr. Gillotti admitted that the Settlement Agreement does not refer to a separate deed to be delivered to the Property Owners (Gillotti Dep., p. 29, l. 17-23). He also admitted that his understanding of Section 15 was that there would be a closing or settlement where all deeds and other instruments would be executed and exchanged, which is the way such an agreement would typically be consummated. (Gillotti Dep., p. 37, l. 22 through p. 38, l. 8). Finally, Mr. Gillotti conceded that Dring/Asaro would not be

4

required to deliver a deed of easement to Plaintiffs prior to the exchange of all deeds and instruments of conveyance by all of the parties. (Gillotti Dep., p. 41, l. 4-15).[1]

Dring/Asaro have produced substantial, uncontradicted parol evidence demonstrating that the permanent easement is not to be transferred until the mutual exchange of documents provided for in Section 15. See U.S. v. Catena, 500 F.2d 1319, 1327 (3d Cir. 1974) and Feld v. Primus Technologies Corp., 97 Fed. R. Evid. Serv. 777, 2015 WL 2357082 (M.D. Pa. 2015) (an attorney's statement made within the scope of his authority is an admission by the party he represents). See also Fed. R. Evid. 801(d)(2)(D) (a statement offered against a party and made by the party's agent or employee on a matter within the scope of that relationship and while it existed is admissible against the party).

Plaintiffs submitted an Affidavit of Theodore Malakin (the "Malakin Affidavit") in opposition to Defendants' Motion (Doc. 77). Mr. Malakin states that he participated in the settlement negotiations as both a Property Owner and as a director of ALO, and that his understanding was that the Property Owners' release of Dring/Asaro was contingent on Dring/Asaro granting the easement to the Property Owners. (Doc. 77, ¶¶ 18, 24). However, in his deposition, Mr. Malakin admitted that he did not recall participating in the specific negotiation of the Settlement

---

[1] Plaintiffs' own brief admits that all deeds and conveyances are required to be transferred at the same time: "The only evidence that the Defendants refer to is the *fact* that the Settlement Agreement provides that *all* deeds and conveyances required be transferred at the same time and that counsel for Plaintiffs acknowledged this *fact*." (Doc. 76, p. 9) (emphasis added).

5

944635.1

Agreement's terms. (Malakin Dep., p. 17, l. 8-20, Ex. "5" to Gawlas Aff.). He did not recall seeing any draft of the Settlement Agreement, or even the final Settlement Agreement before it was signed by Mr. O'Brien. (Malakin Dep., p. 19, l. 25 through p. 20, l. 7). He also did not recall having any discussions with anyone concerning the first sentence of Section 3 prior to the execution of the Settlement Agreement (Malakin Dep., p. 23, l. 16-24). Mr. Malakin also testified that Plaintiffs had given the ALO Board the responsibility of negotiating an agreement to get the Plaintiffs "out of this mess" and in that regard, it was up to ALO, which was "in charge of the whole litigation," to do what was necessary to accomplish that result, which included conveying to Dring/Asaro four lake rights and four docking spaces at the end of Cardinal Lane. (Malakin Dep., p. 25, l. 20 through p. 27, l. 5).

As noted previously, Mr. Profita represented Dring/Asaro in the negotiation and preparation of the Settlement Agreement. In his Supplemental Affidavit (Ex. "2" to Gawlas Aff.), Mr. Profita states that although Mr. O'Brien had requested the Settlement Agreement provide for the conveyance of the North Strip to ALO without granting any permanent easement in favor of Plaintiffs, Dring/Asaro did not agree to that request (¶ 5). Mr. Profita also states that the parties' intention was that the deed for the North Strip, which would also grant the easement to the Plaintiffs, was to be simultaneously exchanged for the deed from ALO to Dring/Asaro for the easement over Lake Ariel and the lower portion of Cardinal Lane and the

6

conveyance of the four lake rights, and that Dring/Asaro would not have agreed to convey the permanent easement to cross the North Strip to Plaintiffs in advance of these conveyances from ALO (¶ 6).

No particular form of words is necessary to create a condition of a duty and, in general, the usual rules of contractual interpretation are to be employed. Even when there is no clear language indicating the parties have agreed to a condition precedent, the court should consider other evidence, such as the parties' admissions, their conduct, "proof of information or statements to the parties," and other surrounding circumstances, to determine whether the parties intended a condition precedent. American Leasing v. Morrison Co., 308 Pa. Super. 318, 454 A.2d 555 (1982). Here, the fact that Plaintiffs' counsel never requested that Dring/Asaro issue a deed of easement to Plaintiffs until over eight years after the Settlement Agreement was executed is a course of conduct constituting permissible extrinsic evidence that Plaintiffs knew they were not entitled to a direct conveyance of the easement prior to ALO performing its obligations under the Settlement Agreement.

Likewise, the Restatement (Second) of Contracts, § 227(1) (1981), provides:

> (1)    In resolving doubts as to whether an event is made a condition of an obligor's duty, and as to the nature of such an event, an interpretation is preferred that will reduce the obligee's risk of forfeiture, unless...the circumstances indicate that he has assumed the risk.

7

Notably, Section 227(1) speaks to "the circumstances" rather than to the language of the contract. Moreover, Comment (b) to Section 227 instructs that when it is doubtful whether the agreement makes an event a condition of an obligor's duty, an interpretation is preferred that will reduce the risk of forfeiture; however, "[t]he rule is, of course, subject to a showing of a contrary intention, and <u>even without clear language</u>, circumstances may show that he assumed the risk of its non-occurrence." (Emphasis added). In this case, Plaintiffs could have protected themselves in the Settlement Agreement (or elsewhere) against the failure of ALO to perform its obligations to Dring/Asaro. In fact, ALO and Plaintiffs were all represented by Joseph O'Brien, Esq. in the negotiation and execution of the Settlement Agreement.

It is obvious from the deposition testimony of Mr. Malakin that ALO had assumed the responsibility to extricate the Plaintiffs from the claims of Dring/Asaro in the prior litigation that ALO did not own the Western Shore Strip and that Plaintiffs were trespassing on the North Strip. Obviously, these claims were a concern to ALO, which had granted Plaintiffs the right to access Lake Ariel over the North Strip. As noted above, Mr. Malakin admitted that ALO was "in charge of the whole litigation," and Plaintiffs had given ALO the responsibility "to get them out of this mess." ALO also paid all the attorney's fees for Mr. O'Brien to also represent the Plaintiffs. (Malakin Dep. p. 10, l. 9-13). As discussed below, ALO unfortunately did not have marketable title to Cardinal Lane (contrary to its representation in

8

Section 5(b) of the Settlement Agreement), and could not grant an easement over Cardinal Lane to Dring/Asaro. Therefore, ALO was in material breach of the Settlement Agreement, and Dring/Asaro were not obligated to proceed with the "exchange" of deeds and other instruments required under the Settlement Agreement. Plaintiffs elected to place their fate in the hands of ALO, assumed the risk that ALO might not perform its obligations under the Settlement Agreement, and should not now be heard to complain of a forfeiture of benefits under the Settlement Agreement.

It has now been established that, contrary to the representations and warranties in Section 5(b) of the Settlement Agreement, ALO never had good and marketable title to the Dock Area at Cardinal Lane or the right to grant Dring/Asaro the easement over the Dock Area as required by the Settlement Agreement. In that regard, the Wayne County Court of Common Pleas, by the Honorable Kenneth W. Seamans, recently entered an Opinion and Order in <u>Culottas v. Ariel Land Owners, Inc.</u>, No. 137-CIVIL-2016, holding that the January 12, 2004 deed by which ALO purportedly obtained title to Cardinal Lane is invalid and void. A true and correct copy of the June 1, 2018 Opinion and Order, certified from the record by the Wayne County Prothonotary, is attached to the Gawlas Affidavit as Exhibit "1."

Collateral estoppel, or issue preclusion, "operates to prevent a question of law or an issue of fact which has once been litigated and adjudicated finally in a court of

9

944635.1

competent jurisdiction from being relitigated in a subsequent suit." <u>Kaller's, Inc. v.</u> <u>John J. Spencer Roofing, Inc.</u>, 565 A.2d 794, 796 (Pa. Super. 1989). Collateral estoppel aims at promoting finality and judicial economy by rendering a determination conclusive in any subsequent action. <u>Patel v. Workmen's Comp.</u> <u>Appeal Bd.</u>, 488 A.2d 1177, 1179 (Pa. Cmwlth. 1985). The doctrine applies where: (1) the issue previously adjudicated is identical to the issue presented in the subsequent action; (2) there was a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. <u>Shaffer v. Smith</u>, 543 Pa. 526, 529, 673 A.2d 872, 874 (1996), citing <u>Safeguard Mut. Ins. Co. v. Williams</u>, 463 Pa. 567, 574, 345 A.2d 664, 668 (1975).

Where these criteria are satisfied, "[c]ollateral estoppel may be used as either a sword or shield by a stranger to the prior action if the party against whom the doctrine is invoked was a party or in privity with a party to the prior action." <u>Columbia Med. Group, Inc. v. Herring & Roll, P.C.</u>, 829 A.2d 1184, 1189 (Pa. Super 2003), quoting <u>Phillip v. Clark</u>, 560 A.2d 777, 780 (Pa. Super. 1989).

Even post-trial motions or an appeal of the Wayne County Court's Order does not preclude its collateral estoppel effect. In that regard, a judgment is considered final, for the purposes of collateral estoppel, unless and until it is reversed. <u>Bassett</u>

10

v. Civil Service Comm'n of City of Phila., 514 A.2d 984, 986 (Pa. Cmwlth. 1986); Shaffer v. Smith, 648 A.2d 26, 28 (Pa. Super. 1994).

Plaintiffs also contend that ALO's failure to transfer the instruments of conveyance required by the Settlement Agreement does not excuse Dring/Asaro from their obligation to transfer the permanent easement, on the basis that Plaintiffs do not control ALO or have the right or ability to require ALO to perform its obligations to Dring/Asaro. Plaintiffs' suggestion that the obligations between them and Dring/Asaro are somehow separate and apart from the obligations between ALO and Dring/Asaro is meritless. There was only one Settlement Agreement, to which Plaintiffs, ALO, and Dring/Asaro were all parties. The Settlement Agreement does not provide that the obligations are severable. To the contrary, the Settlement Agreement, at Section 15, expressly provides that *all* deeds and instruments are to be conveyed at a mutually convenient *time*.

Had it been the parties' intention that the permanent easement was to be conveyed prior to the mutual exchange of deeds and instruments provided for at Section 15, they could easily have so provided in the Settlement Agreement or they could have entered into a separate settlement agreement between only Plaintiffs and Dring/Asaro, whereby Dring/Asaro would convey the permanent easement in exchange for Plaintiffs' release. They did not do so, however, because the deeds and instruments of conveyance to Dring/Asaro from ALO were a material part of the

11

omnibus Settlement Agreement. Plaintiffs have not introduced any parol evidence from Mr. O'Brien, Mr. Gillotti, or Mr. Malakin which refutes the Dring/Asaro interpretation of Sections 3, 5, and 15 of the Settlement Agreement. Indeed, the rights and easements to be conveyed to Dring/Asaro pursuant to Section 5 constitute virtually the entirety of the consideration to them in the Settlement Agreement. Plaintiffs received a release of prior claims from Dring/Asaro in return for the release of prior claims against Dring/Asaro. As the claim made by Plaintiffs against Dring/Asaro in the prior action was for a prescriptive easement over the North Strip and Plaintiffs were going to receive an easement over the North Strip upon consummation of the Settlement Agreement, the release granted by Plaintiffs would have been superfluous, if the closing occurred under the Settlement Agreement.

## II.   Plaintiffs Have Released Dring/Asaro From Any Claim for Prescriptive Easements.

Plaintiffs' suggestion that Dring/Asaro did not adequately assert the affirmative defense of release is meritless. The purpose of asserting available affirmative defenses is to avoid surprise and undue prejudice to plaintiffs by providing them notice and the opportunity to rebut the affirmative defense. See Robinson v. Johnson, 313 F. 3d 128, 134-35 (3d Cir. 2002), citing Blonder-Tongue Labs, Inc. v. Univ. of Ill. Found., 402 U.S. 313, 350, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971). The "fair notice" requirement is satisfied by a short and plain statement of the grounds for the affirmative defense demonstrating a logical relationship to the

12

lawsuit or referring to general facts alleged in any parties' pleadings. <u>Balon v.</u>
<u>Enhanced Recovery, Inc.</u>, 316 F.R.D. 96, 105 (M.D. Pa. 2016), citing <u>Mifflinburg</u>
<u>Tel., Inc. v. Criswell</u>, 80 F. Supp. 3d 566, 573 (M.D. Pa. 2015).

In this case, Plaintiffs cannot claim to be "surprised" or "prejudiced" by
Dring/Asaro's assertion of the mutual release set forth at Section 6 of the Settlement
Agreement. Dring/Asaro affirmatively pled the mutual release at Paragraphs 5 and
20 of their Affirmative Defenses and attached the Settlement Agreement itself to
their Answer. (Doc. 25). Moreover, Plaintiffs themselves affirmatively pled their
release of Dring/Asaro. In that regard, the Amended Complaint alleges that: (a) the
instant action "has its genesis" in the prior litigation between and among Plaintiffs,
Dring/Asaro, and ALO (Doc. 22, ¶ 7); (b) the specific issues in that prior litigation
included whether Plaintiffs had a prescriptive easement to use the Western Shore
Strip for docks, boathouses, and recreation (Doc. 22, ¶ 8.3); (c) that issue was
resolved by the Settlement Agreement (Doc. 22, ¶ 10); (d) the Settlement Agreement
provided for Plaintiffs to release all claims against Dring/Asaro (Doc. 22, ¶ 14); and
(e) Plaintiffs did, in fact, release Dring/Asaro "from all claims." (Doc. 22, ¶ 30). (<u>See</u>
<u>also</u> Doc. 76, pp. 2, 11).

Even were there any merit to their contention, Plaintiffs have not filed a
motion to strike, which is the procedure for objecting to an allegedly insufficient
affirmative defense. <u>See</u>, <u>e.g.</u>, <u>Balon</u>, <u>supra</u>, 316 F.R.D. at 98; <u>Mifflinburg Tel.</u>,

13

944635.1

supra, 80 F. Supp. 3d at 573. Even had they done so, however, such motions are viewed with disfavor and are rarely granted. See, e.g., Balon, 316 F.R.D. at 98; Mifflinburg Telegraph, 80 F. Supp. 3d at 572. In any event, even were there a basis to strike the affirmative defense of release, this Honorable Court should grant Dring/Asaro leave to file amended affirmative defenses.

Plaintiffs next assert that their release of Dring/Asaro is unenforceable for lack of consideration because Plaintiffs have not been granted the permanent easement provided for in the Settlement Agreement. This argument is likewise meritless. To the contrary, the release was supported by ample consideration. First, Section 6 provided not only that Plaintiffs released Dring/Asaro from all claims, but also that Dring/Asaro released Plaintiffs from all claims arising out of or relating to the prior action and the West Shore Strip. There clearly is sufficient consideration for the release of Plaintiffs' claims against Dring/Asaro.

Dring/Asaro scheduled a time of the essence closing on November 18, 2014 for the exchange of the deeds and other instruments required to be mutually exchanged pursuant to Section 15 of the Settlement Agreement. However, ALO and Plaintiffs, who are represented by the same counsel, failed to appear at the closing, and ALO did not tender the instruments of conveyance required by Section 5. Dring/Asaro were ready, willing, and able to convey the North Strip to ALO subject to a permanent easement in favor of Plaintiffs, but did not do so because ALO failed

14

to tender a conveyance of the Cardinal Lane easement to Dring/Asaro. Given this, Plaintiffs should have commenced suit against ALO rather than Dring/Asaro, as it is ALO which has prevented the mutual exchange which would have resulted in a permanent easement in their favor.

Plaintiffs next argue that Dring/Asaro are somehow equitably estopped from enforcing the release. Once again, Plaintiffs' argument is baseless. Under Pennsylvania law, equitable estoppel prevents one from acting differently than another was induced by word or deed to expect, and recognizes that an informal promise implied by words, deeds or representations which leads another to justifiably rely thereon to his own detriment maybe enforced in equity. Kreutzer v. Monterey County Herald Co., 560 Pa. 600, 606, 747 A.2d 358, 361 (2000), quoting Novelty Knitting Mills v. Siskind, 500 Pa. 432, 457 A.2d 502, 503 (1983).

Equitable estoppel is inapplicable here because there is a written Settlement Agreement which sets forth the parties' respective rights and obligations. As discussed above, Dring/Asaro's obligation to transfer a permanent easement over the North Strip does not arise until the exchange of deeds and instruments at a mutually convenient time provided for at Section 15. Dring/Asaro are in compliance with the terms of the Settlement Agreement and have not acted differently than what was required of them under the Settlement Agreement. Accordingly, the doctrine of

944635.1

equitable estoppel does not preclude Dring/Asaro from asserting Plaintiffs' release as a defense to this action.

Finally, Plaintiffs argue that the Settlement Agreement is somehow ambiguous as to whether they have released their prescriptive easement claim. To the contrary, Section 6 explicitly released all of Plaintiffs' claims against Dring/Asaro relating to the prior litigation and the West Shore Strip. Pursuant to Section 8, only the parties' rights and obligations under the Settlement Agreement were excepted from the release. Because Plaintiffs' prescriptive easement claims do not arise out of the Settlement Agreement, they were not excepted from the release.

## III. Plaintiffs Have Failed to Establish Sufficient Evidence of Record to Prevail on Their Claim for Prescriptive Easements.

Plaintiffs suggest that they are not required, at this stage of the proceedings, to establish their claim for prescriptive easements. To the contrary, non-moving parties must point to sufficient evidence of record to sustain their burden of proof on any matter on which they have the burden of proof. Here, Plaintiffs have failed to point to sufficient evidence of record that would sustain their burden of proving that each of them have established prescriptive easements across the West Shore Strip.

Plaintiffs rely heavily upon the Malakin Affidavit (Doc. 77) in an attempt to establish the requirements of prescriptive easements in their favor. Curiously, none of those numerous other Plaintiffs submitted their own affidavits regarding their own uses of the West Shore Strip, just as none of the Plaintiffs signed the answers to

944635.1

Defendants' Interrogatories relating to their prescriptive easement claims. The Malakin Affidavit purports to demonstrate that "all of the Plaintiffs and west shore property owners, their family members and guests use the Lake on a regular basis during the warm weather months." (Doc. 77, ¶ 9). However, the Affidavit does not even identify any of the Plaintiffs, property owners, family members or guests, much less specify the uses made by those persons, or even what Mr. Malakin means by a "regular basis." His statements are said to be based upon "my observation over the past 50 years," but he does not otherwise identify the foundation for the statements made in his Affidavit, or whether he has personally observed the uses made by each property owner over the 21 years immediately preceding the commencement of this lawsuit. Mr. Malakin also suggests that "[s]ome west shore property owners have also used the Lake on a regular basis for winter recreational activity," but does not identify which property owners have done so, how regularly they have done so, or the foundation for his statement in that regard.

Plaintiffs' reliance on Jennings v. Delaware and Hudson Canal Company, 2013 Pa. Super., LEXIS 3040, at *13 (Pa. Super. 2013), is misplaced. In Jennings, Jennings and Sullum owned lots contiguous to, but on opposite sides of, a lot owned by a defunct railway company. Neither of them believed they owned the property, although both made claims for adverse possession of the lot. Jennings claimed that he had given Sullum permission to use the intervening lot. The court determined

17

944635.1

that, since neither of them owned the lot, neither could grant any rights to use the lot. This factual scenario is different from the case at hand, where both ALO and all of the Plaintiffs believed that ALO owned the West Shore Strip, and every Plaintiff paid annual rent to ALO for the use of the property. As a result, the party they all believed owned the property (ALO) granted permission to use the strip to the parties who knew they did not own the property (the Plaintiffs) which makes it impossible for the use by Plaintiffs to be "hostile" to anyone.

Plaintiffs also rely on Zeglan vs. Gahagen, 812 A.2d 558 (Pa. 2002), to assert that, when there are permanent improvements on claimed property, that fact makes it obvious to other parties that adverse rights are being asserted with regard to the property. However, Gahagen is inapposite, as it involved the doctrine of boundary by acquiescence rather than a claimed prescriptive easement and the holding is limited to application of that doctrine. Gahagen involved a consensual boundary line between two property owners which was evidenced by a line of shrubs between the properties. In this case, there is obviously no consensual boundary line between the parties which would imply that two contiguous property owners had previously agreed upon the location of a boundary line between their properties. Instead, ALO claimed to own the West Shore when, in fact, it did not and Plaintiffs are seeking to use the presence of their improvements on the North Strip to evidence that there was an obvious claim of adverse possession, which demonstrates nothing other than the

18

944635.1

fact that they believed they had obtained permission from ALO to construct those improvements.

Finally, Plaintiffs argue that the deeds from their predecessors-in-interest, conveying the right of access to the margin of the Lake bestowed upon them by ALO, are sufficient to convey an inchoate prescriptive easement interest to Plaintiffs. However, none of those deeds contain any provision purporting to convey an inchoate prescriptive easement interest across the property owned by Dring/Asaro known as the West Shore Strip. (See Title Report of R. Anthony Waldron, Ex. "6" to Gawlas Aff.). Plaintiffs acknowledge that ALO had no legal right to grant them permission to use the West Shore Strip. Accordingly, Plaintiffs have failed to establish that they are entitled to tack the alleged adverse use of their predecessors-in-title and, therefore, their claim for prescriptive easements fails.

## IV.  **CONCLUSION**

For the reasons set forth above, as well as in Defendants' Motion for Summary Judgment, Statement of Undisputed Material Facts, and initial supporting Brief, Defendants respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs dismissing the Amended Complaint and awarding damages to Defendants, including reasonable attorney's fees and expenses pursuant to Section 14 of the Settlement Agreement, in an amount to be determined after hearing scheduled by the Court.

944635.1

Respectfully Submitted:

ROSENN, JENKINS & GREENWALD, LLP

BY:   /S/ROBERT N. GAWLAS, JR.
ROBERT N. GAWLAS JR., ESQUIRE
Atty. I.D. No. 46608
GARRY S. TAROLI, ESQUIRE
Atty. I.D. No. 30159
ROBERT L. GAWLAS, ESQUIRE
Atty. I.D. No. 323299
15 South Franklin Street
Wilkes-Barre, PA 18711-0075
rgawlas@rjglaw.com
gtaroli@rjglaw.com
(570) 826-5654 – telephone
(570) 706-3436 – facsimile


DECOTIIS, FITZPATRICK, COLE & GIBLIN, LLP

MICHAEL PROFITA
500 Frank W. Burr Blvd., Suite 31
Teaneck, NJ 07666
Telephone:  201-928-1100
Fax: 201-928-0588
MProfita@DeCotiislaw.com

Attorneys for Defendants,
Lori Dring and Nancy Asaro

20

944635.1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARJORIE M. GILLESPIE, et al.,

        Plaintiffs,

      v.

LORI DRING AND NANCY ASARO,

        Defendants.

NO. 3:15-CV-00950

JUDGE CAPUTO

## CERTIFICATE PURSUANT TO LOCAL RULE 7.8(b)(2)

The undersigned hereby certifies that the foregoing Defendants' Reply Brief in Support of Motion for Summary Judgment does not exceed 5,000 words, based upon the word count feature of the word processing system used to prepare the Brief. The actual number of words is 4,739.

ROSENN, JENKINS & GREENWALD, L.L.P.

BY: /S/ROBERT N. GAWLAS, JR., ESQUIRE
      ROBERT N. GAWLAS, JR., ESQUIRE
      Attorney I.D. #46608
      15 South Franklin Street
      Wilkes-Barre, Pennsylvania 18711-0075
      (570)826-5654
      (570)706-3436 – Facsimile
      rgawlas@rjglaw.com

      Attorneys for Defendants,
      Lori Dring and Nancy Asaro

944635.1

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

MARJORIE M. GILLESPIE, et al.,

    Plaintiffs,

       v.

LORI DRING AND NANCY ASARO,

    Defendants.

NO. 3:15-CV-00950

JUDGE CAPUTO

## CERTIFICATE OF SERVICE

I, ROBERT N. GAWLAS, JR., hereby certify that on the 13th day of July, 2018, I caused to be served true and correct copies of DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT and AFFIDAVIT OF ROBERT N. GAWLAS, JR., ESQUIRE, via ECF to the following:

Joseph A. O'Brien, Esquire
Oliver, Price & Rhodes
1212 South Abington Rd.
P. O. Box 240
Clarks Summit, PA 18411
jaob@oprlaw.com

ROSENN, JENKINS & GREENWALD, LLP

BY:   /S/ ROBERT N. GAWLAS, JR.
       ROBERT N. GAWLAS JR., ESQUIRE

944635.1