## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| NANCY ASARO AND LORI DRING, | CIVIL ACTION NO. 3:23-CV-01576 |
| Plaintiffs, | (SAPORITO, J.) |
| v. | |
| MICHAEL G. ABERNATHY, et al., | |
| Defendants. | |

## MEMORANDUM

The current action before the Court represents only a singular step in a long-standing dispute over property rights at Lake Ariel in Wayne County, Pennsylvania. This action, and all those previous actions, involves the same three groups of parties. The defendants ("Property Owners") collectively represent one of the parties, and they own land on the west side of Lake Ariel.[1] Dring and Asaro represent a second party, owning property south of the Property Owners' land in addition to a strip of land between the Property Owners and the lake. This strip of land is

---

[1] In this current litigation, the defendants note that they consist of "either parties to the [2006] Release or stand as 'successors' to original parties' property interests." (Doc. 64, at 13). It is undisputed that the Property Owners in the current litigation can claim the benefits of the 2006 Settlement Agreement.

referred to as the Western Shore Strip and shares a common property boundary with Lake Ariel. The Ariel Land Owners ("ALO"), a non-party to this action, own the rights to Lake Ariel. For the last two decades, these three parties have brought various lawsuits to define each party's land rights in the Western Shore Strip.

On July 15, 2024, Dring and Asaro filed an amended complaint against the Property Owners, bringing claims of trespass, ejectment, and a request for declaratory relief. (Doc. 60). On October 7, 2025, two of the Property Owners, Michael G. Abernathy and Mary B. Abernathy, asserted counterclaims of easement by prescription, easement by implication, and a request for declaratory relief against Dring and Asaro. (Doc. 126). The current motion before the court concerns Dring and Asaro's motion to dismiss the counterclaims asserted by the Abernathy defendants for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 131). Dring and Asaro also move to strike the affirmative defenses asserted in the Abernathy defendants' counterclaims. (*Id.*). The motion has been briefed by the parties (Doc. 137; Doc. 141; Doc. 143) and it is now ripe for review.

## I.    Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic

documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

Under Rule 12(f) of the Federal Rules of Civil Procedure, "[t]he court may strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

> The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters. Because a motion to strike is not favored, a court will generally not grant such a motion unless the material to be stricken bears no possible relationship to the controversy and may cause prejudice to one of the parties. While a trial court has considerable discretion in whether to grant or deny such a motion, they are highly disfavored and should only be granted when the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.

*Loscombe v. City of Scranton*, 902 F. Supp. 2d 532, 547 (M.D. Pa. 2012) (citations and internal quotation marks omitted). "[T]he exercise of this power [to strike] should be reserved for cases in which the pleading is so confused, ambiguous, vague, or otherwise unintelligible that its true

substance, if any, is well disguised." *Nagel v. Pocono Med. Ctr.*, 168 F.R.D. 22, 23 (M.D. Pa. 1996) (internal quotation marks omitted).

## II.   Background

The procedural history of this action is familiar to both the parties and the Court, having been thoroughly detailed in prior proceedings. Accordingly, we will recount only the essential background here and focus on the procedural history relevant to the motion presently before the Court.

The dispute between the parties began when the plaintiffs, Dring and Asaro, purchased approximately fifty-two (52) acres of land adjoining Lake Ariel in 1996. Two years later, in 1999, ALO sued Dring and Asaro in the Court of Common Pleas of Wayne County to prevent them from accessing the waters of Lake Ariel from their property. The action was later removed to the U.S. District Court for the Middle District of Pennsylvania. In 2001, Dring and Asaro purchased the 1.9-acre property at the heart of the underlying action, the Western Shore Strip, from the Rensselaer Polytechnic Institute and Wells College. The Western Shore Strip was used by many parties, including the Property Owners, as an unimpeded pathway from their respective lots to the waters of Lake Ariel.

Accordingly, the Property Owners commenced a state court action in the Court of Common Pleas of Wayne County against Dring and Asaro for the Property Owners' continuing use of that land. While the matter was ultimately stayed by this Court, Dring and Asaro were permitted to amend their counterclaim in the first action and join the Property Owners as new defendants in the original action, thereby consolidating the claims and defenses of all three parties into one singular case. The consolidated action featured numerous claims and counterclaims, two of which are important in the matter before the court. First, Dring and Asaro brought trespass claims against the Property Owners. Second, the Property Owners brought prescriptive easement claims against Dring and Asaro in this Court. This action was titled as *Ariel Land Owners, Inc. v. Lori Dring and Nancy Asaro v. Ariel Land Owners, Inc., Karl R. Iffland and Alice L. Iffland, et al.*, Docket No.: 3:01-CV-294. In this memorandum, we shall refer to it as "*Dring I.*"

*Dring I* was important for two reasons. First, the lawsuit resulted in a partial settlement agreement entered into by all three parties ("2006 Settlement Agreement") whereby each party "release[d] the other party and such party's predecessors in title, successors and assigns from any

and all claims arising out of or relating to the Lawsuit and the Western Shore Strip…." *Asaro*, 2025 WL 950851, at \*1 (quoting section six of the 2006 Settlement Agreement). It further specified that the Agreement "shall not constitute a bar against or release of any existing or future rights, claims or causes of action held by or accruing in favor of Dring/Asaro…." *Id.* (quoting section nine of the Settlement Agreement). Second, independent of the 2006 Settlement Agreement, *Dring I* was also fully tried to conclusion on the issue of Dring and Asaro's ownership of the Western Shore Strip. *See Ariel Land Owners, Inc. v. Dring*, No. CIV. A. 3:01-CV-0294, 2008 WL 189644 (M.D. Pa. Jan. 18, 2008), *amended on reconsideration in part*, No. CIV. A 3:01-CV-294, 2008 WL 3837482 (M.D. Pa. Aug. 13, 2008). The Court, having found that "the ownership of the west shore strip south of the portion which was conveyed in the Settlement Agreement is vested in Lori Dring and Nancy Asaro[,]" concluded that "Asaro/Dring have established their ownership by record title to the west shore reservation of the South Strip." *Id.* at \*14. The Third Circuit later affirmed that judgment. *See Ariel Land Owners, Inc. v. Dring*, 374 F. App'x 346 (3d Cir. 2010). Therefore, not only did *Dring I* release certain claims, but it also established that Dring and Asaro

owned the Western Shore Strip in fee simple by record chain of title through the deeds of Rensselaer Polytechnic Institute and Wells College.

Nonetheless, *Dring I* and the 2006 Settlement Agreement failed to resolve all the parties' ongoing grievances, and in the following years, ALO allegedly breached its duties provided for in the Agreement. Three lawsuits commenced as a result of that alleged breach: (1) *Diefenderfer v. Dring*, 3:15-0500 (*"Diefenderfer"*); (2) *Gillespie, et al. v. Dring*, 3:15-CV-950 ("*Gillespie*"); and (3) *Dring v. Ariel Land Owners, Inc.*, 3:15-CV-00478 ("*Dring II*"). Each lawsuit, in one way or another, sought to enforce the obligations provided by the Agreement. But pertinent to the motion currently before us, the Court also reemphasized in each action its holding in *Dring I*: Dring and Asaro owned the Western Shore Strip in fee simple by record chain of title through the deeds of Rensselaer Polytechnic Institute and Wells College.

In *Gillespie*, the Property Owners sought declaratory relief against Dring and Asaro, declaring that they had easement rights to use the Western Shore Strip based on their status as bona fide purchasers. The Court held the following:

> To be deemed a bona fide purchaser, one must have no notice of the outstanding rights of others. *Poffenberger*

> v. Goldstein, 776 A.2d 1037, 1042 (Pa. Cmwlth. 2001) (citation omitted). However, the recording of a deed serves to provide public notice in whom the title resides. Id. (citation omitted). Even Plaintiffs' brief in opposition to Defendants' motion to dismiss acknowledges the creation of the West Shore Strip by deeds recorded in Wayne County during the period from December 13, 1859, through January 21, 1862. Plaintiffs' Complaint contains no allegations that they or their predecessors in interest obtained their rights prior to 1862 and accordingly, they were on notice of the reservation of the West Shore Strip and therefore, cannot be deemed bona fide purchasers [of the land].

Gillespie v. Dring, N. 3:15-CV-0950, 2015 WL 5895513, at *7 (M.D. Pa. Oct. 6, 2015), on reconsideration in part, No. 3:15-CV-0950, 2016 WL 213620 (M.D. Pa. Jan. 19, 2016) (emphasis added).

In Dring II, when analyzing whether ALO breached the terms of the 2006 Settlement Agreement, the Court acknowledged its direct findings from Dring I:

> (1)  The West Shore Strip was passed under residuary estate of Charles Weston to Wells College and Rensselaer Polytechnic Institute ("RPI"). Specifically, Wells College obtained one-third of the West Shore Strip, and RPI obtained the remining two-thirds.
>
> (2)  RPI conveyed its two-thirds interest in the West Shore Strip to Dring and Asaro by quitclaim deed dated November 2, 2001.
>
> (3)  Wells College conveyed its one-third interest in the West Shore Strip to Dring and Asaro by quitclaim

- 9 -

deed dated December 6, 2001.

(4)   Neither Wells College nor RPI had conveyed any interest in the West Shore Strip prior to conveying their interests to Dring and Asaro. Therefore, the ownership of the West Shore Strip south of the portion which was conveyed in the Settlement Agreement is vested in Dring and Asaro.

*Dring v. Ariel Land Owners, Inc.*, No. 3:15-CV-00478, 2018 WL 3934623, at *3 (M.D. Pa. Aug. 16, 2018, *aff'd on other grounds*, 782 F. App'x 133 (3d Cir. 2019). It summarized that "Dring and Asaro obtained the West Shore Strip from the Colleges by deed in November and December 2001." *Id.*

Moreover, in *Diefenderfer*, the Court held that:

> Here, [Diefenderfer] may not seek an order determining that [Dring/Asaro] did not acquire any interest in the Western Shore Strip because this Court has already entered judgment in favor of [Dring and Asaro] in the Prior Action as to record title of the South Strip, which is part of the Western Shore Strip. *See Ariel Land Owners, Inc. v. Dring*, No. 3:cv-01-0294, 2008 WL 189644, at *15 (M.D. Pa. Jan. 18, 2008) ("Asaro/Dring have established their ownership by record title to the west shore strip reservation of the South Strip to a width of 2.4 feet.")

*Diefenderfer v. Dring*, No. CV 3:15-CV-0500, 2015 WL 5895748, at *8 (M.D. Pa. Oct. 6, 2015).

In summary, *Dring II, Gillespie,* and *Diefenderfer* reiterated the

- 10 -

Court's finding and holding in *Dring I*: Dring and Asaro owned the Western Shore Strip in fee simple by record chain of title through the deeds of Rensselaer Polytechnic Institute and Wells College.[2]

However, the ownership of the Western Shore Strip is not the only issue relevant to this action that was fully briefed and adjudicated in prior litigation between the parties. As we noted above, the 2006 Settlement Agreement contained language that "release[d] the other party and such party's predecessors in title, successors and assigns from any and all claims arising out of or relating to the Lawsuit and the Western Shore Strip…" and further specified that the Agreement "shall not constitute a bar against or release of any existing or future rights, claims or causes of action held by or accruing in favor of Dring/Asaro…." *Id.* (quoting section nine of the Settlement Agreement). *Asaro*, 2025 WL 950851, at *1 (quoting sections six and nine of the 2006 Settlement Agreement). The interpretation and scope of that language has also

---

[2] Beyond the Court's findings, a 2019 Settlement Agreement between Dring and Asaro and the Property Owners also contained the following provision: "[The Property Owners] acknowledge Dring and Asaro's ownership of the west shore strip…." *See Asaro v. Abernathy*, No. 3:23-CV-01576, 2025 WL 950851, at *6 (M.D. Pa. Mar. 28, 2025), *reconsideration denied*, No. 3:23-CV-01576, 2025 WL 2977123 (M.D. Pa. Oct. 21, 2025).

served as the basis for prior actions.

In *Gillespie v. Dring*, 350 F. Supp. 3d 333, 339 (M.D. Pa. 2018), the Court was asked to determine whether the Property Owners could assert prescriptive easement claims concerning the Western Shore Strip under the language of the 2006 Settlement Agreement. The Court ruled that the Property Owners were barred from bringing those claims, as the Property Owners prescriptive easement claims over the Western Shore Strip were claims "arising out of or relating to the Lawsuit and the Western Shore Strip." *Id.* at 339. It explained that "the broadness of the language 'any and all claims' and 'including but not limited to' … supports the conclusion that prescriptive easement claims are covered under the release" in the 2006 Settlement Agreement. *Id.* The Third Circuit subsequently affirmed the District Court's holding. *See Gillespie v. Dring*, No. 19-2073, 2022 WL 1741888, at *4 n.7 (3d Cir. May 31, 2022) ([W]e agree with the District Court that the plain language of the Settlement Agreement released the Property Owners' prescriptive easement claim.").

Moreover, earlier in the current action, we were asked to determine whether Dring and Asaro could assert claims for trespass, ejectment, and declaratory judgment under the language of the 2006 Settlement

Agreement. The Court held that the 2006 Settlement Agreement did not bar Dring and Asaro from bringing claims for trespass and ejectment against the Property Owners, finding that the plain language of the Settlement Agreement "indicates that the parties did not intend to release future claims [of trespass and ejectment]" and "explicitly includ[es] language to reserve the plaintiffs' rights to pursue those claims in the future." *Asaro v. Abernathy*, No. 3:23-CV-01576, 2025 WL 950851 at \*4, 5 (M.D. Pa. Mar. 28, 2025). That holding was further reinforced by a 2019 Settlement Agreement between the parties, which "clearly and unambiguously reserve[d] the plaintiffs' right to pursue any trespass claims for actions occurring on or after April 1, 2019, … against the Property Owners and their successors." *Id.* at 6. Accordingly, the Court allowed Dring and Asaro to proceed with those claims against the Property Owners. These claims now serve as the foundation for the underlying action before the Court.

Therefore, while the procedural history of this action proves extensive, that history has resulted in three foundational holdings pertinent to his memorandum: (1) Dring and Asaro own the Western Shore Strip in fee simple by record chain of title through the deeds of

- 13 -

Rensselaer Polytechnic Institute and Wells College; (2) the 2006 Settlement Agreement bars all claims brought by the Property Owners arising out of or relating to the 2001 Lawsuit and the Western Shore Strip, including prescriptive easement claims; and (3) the 2006 Settlement Agreement (and the subsequent 2019 Settlement Agreement) expressly reserved Dring and Asaro's rights to bring trespass and ejectment claims in the future. With this understanding, we analyze the merits of the Abernathy defendants' counterclaims.

## III.  Discussion

The Abernathy defendants bring three counterclaims: (1) easement by prescription; (2) easement by implication; and (3) a request for declaratory judgment. We find that each counterclaim fails for the following reasons.

### A. Easement by Prescription

The Abernathy defendants' easement by prescription claim is barred by the doctrine of res judicata. "The doctrines of res judicata and collateral estoppel are easily confused because the term 'res judicata' is often used to embrace both doctrines. However, it is important to distinguish the two concepts because res judicata and collateral estoppel

apply in different circumstances with different consequences to litigants." *Novak v. World Bank*, 703 F.2d 1305, 1308-09 (D.C. Cir. 1983) (citation omitted). As the Supreme Court has explained:

> Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.

*Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citations omitted). A claim is barred under res judicata when three circumstances are present: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit is based on the same cause of action." *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991). Here, all three circumstances are satisfied.

As we noted above, in *Gillespie v. Dring*, 350 F. Supp. 3d 333 (M.D. Pa. 2018), the Court ruled that that the 2006 Settlement Agreement barred the Property Owners' prescriptive easement claims against Dring and Asaro because they were claims "relating to" the Western Shore Strip and "the broadness of the language 'any and all claims' and 'including but not limited'" in the 2006 Settlement Agreement "supports the conclusion

that prescriptive easement claims are covered under the release." *Gillespie*, 350 F. Supp. 3d at 339. The *Gillespie* action was brought by, among others, Matthew Drace and Jonathan Chernes, who sold their property to the Abernathy defendants on May 28, 2018.[3] (Doc. 141) (citing (Doc. 1-6)). The Abernathy defendants are therefore the successors of the property once owned by Drace and Chernes. Individuals "preceding and succeeding owners of property" are precluded from attempting to relitigate resolved claims or issues. *See Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) ("[N]onparty preclusion may be justified based on a variety of pre-existing 'substantive legal relationship[s]' between the person to be bound and a party to the judgment … Qualifying relationships include … preceding and succeeding owners of property…."). This current action, moreover, parallels that seen in *Gillespie*. Here, as in *Gillespie*, the Abernathy defendants seek prescriptive easements for the Western Shore Strip, where Dring and Asaro rely on the 2006 Agreement to bar those

---

[3] The Abernathy defendants have laid out the ownership history of the land currently owned by the defendants. In 1998, the Abernathy's predecessor in title, Mathew Drace, purchased the subject property. (Doc. 141, at 22). On April 14, 2007, Drace transferred his entire ownership interest to himself and Jonathan Chernes as joint tenants. (*Id.*). On May 29, 2018, Drace and Chernes sold their property to the Abernathy defendants. (*Id.*).

claims. Accordingly, the Abernathy defendants appear to raise "successive litigation of the very same claim" that was raised in *Gillespie*. *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001). But this is precisely the type of claim that the doctrine of claim preclusion forecloses, as it "preclude[s] parties from contesting matters that they have had a full and fair opportunity to litigate." *Montana v. United States*, 440 U.S. 147, 153 (1979). We have already held that the 2006 Agreement bars prescriptive easement claims by those parties subject to the 2006 Agreement.

### B. Easement by Implication

The Abernathy defendants' easement by implication claim is barred by the 2006 Settlement Agreement. A property settlement for purposes of interpretation is treated the same as any other contract under Pennsylvania law. *Norfolk S. Ry. Co. v. Reading Blue Mountain & N. R. Co.*, 346 F. Supp. 2d 720, 725 (M.D. Pa. 2004) (citing *Hullett v. Towers, Perrin, Forster & Crosby, Inc.*, 38 F.3d 107, 111 (3d Cir. 1994) (citing *Arnold M. Diamond. Inc., v. Gulf Coast Trailing Co.*, 180 F.3d 518, 521 (3d Cir. 1999)). "A court's purpose in examining a contract is to interpret the intent of the contracting parties, as they objectively manifest it." *Id.* (quoting *Sanford Investment Company, Inc., v. Ahlstrom Machinery*

*Holdings, Inc.*, 198 F. 3d 415, 421 (3d Cir. 1999) (citations omitted)). "When the terms of the contract are unambiguous, the express language of the agreement controls its meaning." *Id.* (citing *Sanford Investment Company, Inc.*, 198 F.3d at 421). "A term is ambiguous if it is susceptible to reasonable alternative interpretations." *Id.* (quoting *Sanford Investment Company, Inc.,* 198 F.3d at 421). "In determining whether a contract is ambiguous, the court is not limited to a review of the language of the document, but may also consider the context in which the contract was made." *Id.* (quoting *Sanford Investment Company, Inc.,* 198 F.3d at 421).

Here, the 2006 Settlement Agreement between the parties contained the following provision:

> 6.    The Property Owners on the one hand; and Dring/Asaro on the other hand do hereby release the other party and such party's predecessors in title, successors and assigns from *any and all claims arising out of or relating to the Lawsuit and the Western Shore Strip* including but not limited to claims for compensatory damages, punitive damages, trespass, attorneys fees, or costs of court.

(Doc. 1-20, ¶ 6) (emphasis added). The provision clearly and unambiguously released "any and all claims relating to the Lawsuit and the Western Shore Strip." (*Id.*). As the Court noted in *Gillespie*, the 2006

Settlement Agreement barred prescriptive easement claims relating to the Western Shore Strip because "the broadness of the language 'any and all claims' … supports the conclusion that prescriptive easement claims are covered under the release." *Gillespie*, 350 F. Supp. 3d at 339. Here, the broadness of the language "any and all claims" equally covers the Abernathy defendants' easement by implication claim relating to the Western Shore Strip, and as the successors to Drace, an original party to the 2006 Settlement Agreement, the Abernathy defendants are bound by the terms of the Agreement.[4] *See* (Doc. 1-20, ¶ 6) (releasing parties' "predecessors in title, successors, and assigns" from any and all claims arising out of the Lawsuit and Western Shore Strip). Therefore, the 2006 Agreement bars the Abernathy defendants' easement by implication claim as that claim was released by Drace in the previous settlement agreement.[5]

---

[4] It is undisputed that the Abernathy defendants are successors to Drace. *See supra* footnote 3.

[5] Dring and Asaro also moved to dismiss the Abernathy defendants' easement by implication claim for a failure to allege the requisite elements of that claim. (Doc. 137, at 20–21). The Abernathy defendants failed to respond to that contention in their brief in opposition. *See generally* (Doc. 141). The filing of a brief in opposition to a motion to dismiss that fails to respond to a substantive argument to dismiss a
*(continued on next page)*

## C. Declaratory Judgment

The federal Declaratory Judgment Act, 28 U.S.C. § 2201, provides that "[i]n a case of actual controversy within its jurisdiction .. any court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration, whether further relief is or could be sought." 28 U.S.C. § 2201(a). "District courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). Moreover, the Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* at 287 (internal quotations and citations omitted).

Courts within the Third Circuit have consistently found that the party seeking declaratory judgment has the burden of establishing the

---

particular claim results in the waiver or abandonment of that claim. *See Dreibelbis v. Scholton*, 274 Fed. App'x 183, 185 (3d Cir. 2008) (affirming district court's finding of waiver as to an argument where plaintiff had opportunity to address it in his opposition brief but failed to do so). Therefore, although we find that the 2006 Settlement Agreement bars the Abernathy defendants' claim, that claim additionally warrants dismissal because of the defendants' failure to address Dring and Asaro's contention.

existence of an actual case or controversy. *Team Angry Filmworks, Inc. v. Geer*, 214 F. Supp. 3d 432, 441 (W.D. Pa. 2016); *Dodge-Regupol, Inc. v. RB Rubber Prod., Inc.*, 585 F. Supp. 2d 645, 650 (M.D. Pa. 2008) ("[A] party seeking to base jurisdiction on the Declaratory Judgment Act bears the burden of proving that the facts alleged, 'under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'") (quoting *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343 (Fed. Cir. 2007)). Here, the Abernathy defendants seek a determination that they have a legal prescriptive easement and legal easement by implication on the Western Shore Strip. (Doc. 126, ¶¶ 26–28). Nonetheless, as we noted above, the defendants' easement claims are barred by the 2006 Settlement Agreement, and therefore, the Abernathy defendants no longer plead claims with an existing actual case or controversy. *See Eisai R&D Mgmt. Co. v. Dr. Reddy's Lab'ys, Inc.*, No. CV 22-5950, 2023 WL 7331272, at \*8 (D.N.J. Nov. 7, 2023) (dismissing counterclaims due to a defendant's failure to prove a case or controversy). The Abernathy defendants' request for a declaratory judgment will be denied.

- 21 -

### D. Affirmative Defenses

The Abernathy defendants have raised thirty affirmative defenses in their response to Dring and Asaro's claims for trespass, ejectment, and a request for declaratory judgment. (Doc. 126). Dring and Asaro move to strike twenty of those defenses. (Doc. 131).

Dring and Asaro first move to strike the Abernathy defendants' defenses (6, 12, 26, and 29) that rely on the contention that they are not bound by the 2006 Agreement. *See* (Doc. 131). We will grant that request. It is undisputed that the Abernathy defendants are successors to the 2006 Agreement through Drace and thus bound by that 2006 Agreement. Indeed, the defendants' brief in support confirms this notion. (Doc. 141, at 22). Therefore, the Abernathy defendants' assertion is meritless.

Dring and Asaro also move to strike the Abernathy defendants' defenses (8, 11, 13, 16, and 20) that rely on claims of easements or possessory rights over the Western Shore Strip. *See* (Doc. 131). We will grant that request. Our holding here, and the Court's holdings in *Gillespie, Dring II,* and *Diefenderfer,* have reiterated that the defendants' prescriptive and implied easement claims are barred by the 2006 Agreements, and therefore any claim of possessory rights over the

Western Shore Strip by the Abernathy defendants is meritless.

Dring and Asaro move to strike the Abernathy defendants' defenses (25, 26, and 27) that rely on the assertion that the 2006 Agreement did not release future claims for trespass, ejectment, or declaratory judgment. *See* (Doc. 131). We will grant that request. In simplest terms, the Abernathy defendants' allegations run directly counter to our holding in *Asaro v. Abernathy*, No. 2:23-CV-1576, 2025 WL 950851, at *1 (M.D. Pa. Mar. 28, 2025), where we expressly found that Dring and Asaro's claims for trespass, ejectment, and declaratory judgment are *not* barred by the 2006 Agreement. Therefore, the Abernathy defendants' assertion is meritless.

Dring and Asaro move to strike the Abernathy defendants' defenses (10, 11, 14, 22, and 23) that rely on the assertion that Dring and Asaro do not have record title to the Western Shore Strip. *See* (Doc. 131). We will grant that request under the doctrine of collateral estoppel. As we noted above, the doctrine of collateral estoppel "prevents parties from litigating again the same issues when a court of competent jurisdiction has already adjudicated the issue on its merits, and a final judgment has been entered as to those parties and their privies." *Witkowski v. Welch*, 173

F.3d 192, 198 (3d Cir. 1999) (citing *Schroeder v. Acceleration Life Ins. Co.*,

972 F.2d 41, 45 (3d Cir. 1992). To bar a potential issue, a party must show:

> (1) the issue decided in the prior adjudication must be identical with the one represented in the later action;
>
> (2) there must have been a final judgment on the merits;
>
> (3) the party against whom collateral estoppel is asserted must have been a party or in privity with the party to the prior adjudication; and
>
> (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in question in the prior adjudication.

*Id.* (citations omitted). Here, the issue of whether Dring and Asaro own

the Western Shore Strip satisfies all four elements.

As we noted above, the issue of ownership of the Western Shore

Strip, the one serving as the basis for the five identified affirmative

defenses, was tried to conclusion in *Dring I*. As a party to that action,

Drace, the Abernathy defendants' predecessor in title had a full and fair

opportunity to litigate ownership of the land, and did so throughout his

involvement within the case.[6] The Court, however, concluded that

"Asaro/Dring have established their ownership by record title to the west

---

[6] Again, there is no dispute that the Abernathy defendants are in privity with Drace as they are his successors. *See supra* footnote 3.

- 24 -

shore reservation of the South Strip." *Dring*, 2008 WL 189644 at \*14. The Third Circuit later affirmed that judgment. *See Ariel Land Owners, Inc. v. Dring*, 374 F. App'x 346 (3d Cir. 2010). Moreover, we further note that while not dispositive to the issue of collateral estoppel, the Court emphasized that same holding in *Diefenderfer, Gillespie*, and *Dring II*: Dring and Asaro owned the Western Shore Strip in fee simple by record chain of title through the deeds of Rensselaer Polytechnic Institute and Wells College. Therefore, the Abernathy defendants are collaterally estopped from arguing the issue of land ownership of the Western Shore Strip, and all affirmative defenses based on that assertion will be stricken.

Dring and Asaro finally move to strike the Abernathy defendants' affirmative defenses (1, 4, 7, 9, and 15) that rely on the assertion that they are too vague and unintelligible. *See* (Doc. 131). However, as we noted above, a court should only grant a motion to strike "when the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." *Loscombe*, 902 F. Supp. 2d at 547. Here, unlike with the Abernathy defendants' other asserted affirmative defenses, we find that these five

asserted defenses are directly relevant to the controversy before the Court and do not cause prejudice to any of the parties. Therefore, Dring and Asaro's motion to strike as to these defenses will be denied.

## IV.    Conclusion

For the foregoing reasons, Dring and Asaro's motion to dismiss will be granted in its entirety, and their motion to strike will be granted in part and denied in part. The motion to strike will be granted as to affirmative defenses 6, 8, 10, 11, 12, 13, 14, 16, 20, 22, 23, 25, 26, 27, and 29. The motion to strike will be denied as to affirmative defenses 1, 4, 7, 9, and 15.

An appropriate order follows.


Dated: July 14, 2026                           *s/Joseph F. Saporito, Jr.*
                                               JOSEPH F. SAPORITO, JR.
                                               United States District Judge