**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **NANCY ASARO and LORI DRING**<br><br>**Plaintiffs,**<br><br>vs<br><br>**MICHAEL G. ABERNATHY AND MARY B. ABERNATHY**<br><br>**Defendants.** | **JURY TRIAL DEMANDED**<br><br>**THE HONORABLE JOSEPH J SAPORITO, JR.**<br><br>**NO.: 3:23-cv-01576-JJS** |

**REPLY BRIEF IN SUPPORT OF MOTION OF ABERNATHY DEFENDANTS FOR LEAVE TO FILE AMENDED ANSWER WITH AFFIRMATIVE DEFENSES**

***NOW COMES*** the Defendants, Michael Abernathy and Mary Abernathy ("Abernathy"), by and through counsel, Harry T. Coleman, Esquire, and hereby submits this Reply Brief in Support of Motion to Amend Answer and Affirmative Defenses pursuant to the Federal Rules of Civil Procedure, seeking an Order permitting the filing of an Amended Answer and Affirmative Defenses

## I. <u>INTRODUCTION</u>

Defendants Michael G. Abernathy and Mary B. Abernathy ("Abernathy Defendants") respectfully submit this Brief in support of their Motion for Leave to File an Amended Answer with Affirmative Defenses pursuant to Federal Rule of Civil Procedure 15(a)(2). The requested

amendment should be permitted because it places before the Court defenses arising from the same Lake Ariel property dispute already at issue, incorporates recently developed title and assignment evidence, and will allow the parties' competing property rights to be decided on their merits.

Plaintiffs' Amended Complaint asserts claims for trespass, ejectment, and declaratory and injunctive relief concerning the West Shore Parcel at Lake Ariel. Plaintiffs allege that the Abernathy Defendants must cross the West Shore Parcel to reach Lake Ariel and that such use constitutes trespass. The proposed amended pleading does not inject an unrelated transaction or a new factual controversy. Rather, it pleads additional defenses directly bearing upon whether the Abernathy Defendants possess enforceable access, easement, ownership, prescriptive, and bona-fide-purchaser rights that defeat or limit Plaintiffs' claims.

The amendment is particularly appropriate because the Abernathy Defendants have obtained an assignment of rights from Rensselaer Polytechnic Institute ("RPI"), the grantor in Plaintiffs' November 2, 2001 Quit Claim Deed. That deed contains an express restriction prohibiting the grantee, without the grantor's prior written consent, from selling, assigning, gifting, bequeathing, transferring, or otherwise conveying an interest in the

property to any person or entity if the transfer would adversely affect adjoining property owners on the same side of Lake Ariel or the Lake/Homeowners Association. The deed further provides that an adverse effect would be created, among other things, if a grantee/transferee paid more than the price paid to the grantor or prohibited physical access to the lake. The deed reserves enforcement and consent rights to the grantor and its successors or assigns or designees. The Abernathy Defendants contend that the subsequent assignment places them in RPI's position with respect to those enforcement rights.

The proposed amendment also preserves the Abernathy Defendants' defense that they purchased their Lake Ariel interest for value on May 29, 2018, without actual or constructive notice of the 2006 federal settlement agreement or other claimed limitations that were never recorded or indexed in the Wayne County Recorder of Deeds or Prothonotary records. The requested pleading therefore raises defenses that go to the core merits of Plaintiffs' requested trespass, ejectment, declaratory, injunctive, and fee relief.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs filed the operative Amended Complaint on July 15, 2024. They allege ownership in fee of the approximately 1.92-acre West Shore

Parcel, described as extending approximately 5,800 feet along Lake Ariel, and contend that the Abernathy Defendants and other West Shore occupants cannot directly access Lake Ariel without crossing that parcel. Plaintiffs seek relief under three counts: trespass, ejectment, and declaratory/injunctive relief.

The Abernathy Defendants deny that Plaintiffs may exclude them from the disputed shoreline area and have consistently maintained that they and their predecessors possess rights in and to the West Shore Parcel and access to Lake Ariel. The proposed Amended Answer does not alter that fundamental position. It supplements the defenses supporting it.

As set forth in the Motion, the Abernathy Defendants obtained an assignment of RPI's enforcement and consent rights arising from the November 2, 2001 deed to Plaintiffs predecessor in title. The proposed amended pleading therefore asserts, among other matters, that Plaintiffs' claims are barred or limited because Defendants possess a legal right to use the disputed parcel; that easement, prescriptive-easement and adverse-possession principles apply; and that Plaintiffs are subject to the deed restriction and the rights assigned by RPI. It must be noted that this is a good faith assertion of various defenses with evidentiary support to be supplied.

The amendment further pleads that the Abernathy Defendants were bona fide purchasers for value when they acquired their Lake Ariel property on May 29, 2018, and that a Wayne County title search disclosed no recorded lis pendens or county-record notice of the 2006 Agreement or the federal litigation. The proposed defenses accordingly place at issue whether an unrecorded federal agreement can bind subsequent purchasers who lacked actual, record, or inquiry notice.

Defendants Michael G. Abernathy and Mary B. Abernathy respectfully request leave to amend their Answer and Affirmative Defenses. Plaintiffs' opposition treats every proposed defense as an effort to relitigate ownership of the Western Shore Strip or revive previously rejected easement claims. That characterization does not resolve the separate issue raised by Defendants' acquisition of Rensselaer Polytechnic Institute's retained deed-enforcement rights. Plaintiffs' ownership and the existence of enforceable restrictions upon the exercise of that ownership are different questions.

The Court can preserve its prior rulings while permitting a specifically confined defense based on the RPI assignment. If the Court determines that portions of the proposed pleading repeat defenses already adjudicated, Defendants alternatively request partial leave, conditioned

upon removal of those portions and submission of a clarified pleading. Plaintiffs' own discussion of proposed Defenses 25 and 27 identifies assignment allegations combined with other theories. That objection supports separating the theories, rather than rejecting every amendment.

Defendants do not contend that Rule 15 automatically revives an adjudicated claim, that an assignment conveys more than RPI possessed, or that the 2006 Agreement has already been held to release future trespasses. The requested amendment should instead be evaluated by the source, scope, timing, and legal effect of the particular assigned rights alleged.

## II. RELEVANT RECORD AND QUESTION PRESENTED

The motion identifies the RPI deed restriction and alleges that Defendants acquired RPI's enforcement and consent rights. Motion, (Doc. 193, ¶¶ 4–12). The supporting brief explains the asserted distinction between ownership of the shoreline parcel and enforcement of restrictions contained in the deed conveying that parcel. (Doc. 197, §§ I, II, IV.D). The attached assignment names Michael and Mary Abernathy and Ariel Landowners, Inc. as assignees, and expressly transfers retained enforcement authority. Its recording cover reflects recording on August 3, 2026, as Instrument No. 202607898, Book 6620, beginning at page 542.

(Doc. 193, attachment Tab A), recording cover and assignment. Plaintiffs respond that the proposed pleading includes previously rejected ownership, notice, and easement theories, and that the assignment allegations are insufficiently separated from those theories. (Doc. 198, pp. 7–16).

The Court's March 28, 2025 Memorandum held that the 2006 Agreement did not release Plaintiffs' future trespass claims. (Doc. 81, pp. 9–14). The Memorandum also reproduced the 2019 Agreement's express preservation of defenses to later trespass claims. (Doc. 81, pp. 5–6). Defendants recognize that preserving defenses does not recreate defenses already extinguished or adjudicated. It does, however, distinguish Plaintiffs' right to pursue a claim from their entitlement to prevail against every defense to that claim.

The July 14, 2026 Memorandum dismissed the counterclaims for prescriptive easement, implied easement, and declaratory relief, and struck fifteen original affirmative defenses. (Doc. 186, pp. 14–26). The Court held that Defendants are bound by the 2006 Agreement through Drace, that their prescriptive and implied easement claims are barred, and that they are collaterally estopped from disputing Plaintiffs' record ownership. (Doc. 186, pp. 16–19, 22–25). The present request must respect those holdings. The separate question is whether they also foreclose a defense based on

RPI's retained covenant-enforcement rights, which the Court did not analyze.

## III. ARGUMENT

### A. Rule 15 permits a confined amendment that preserves the Court's prior rulings

Rule 15(a)(2) directs courts to give leave freely when justice requires. The relevant grounds for denying leave include undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, and futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The inquiry must address the amendment actually sought and the reason for rejecting it.

The Third Circuit expressly recognizes that a court may grant amendment subject to reasonable conditions, including narrowing an overbroad proposed amendment. *Mullin v. Balicki*, 875 F.3d 140, 149–50 (3d Cir. 2017). It also explains that a court can condition amendment upon omission of claims already dismissed. *Id*. at 157–58. Although *Mullin* arose in a civil-rights action, these propositions concern the court's general authority to manage amendments under Rule 15.

That approach answers Plaintiffs' principal procedural objection. The Court need not choose between reinstating every disputed defense and denying all amendment. It may retain its earlier holdings, prohibit

inconsistent allegations, and permit only a distinct assignment-based defense that is not foreclosed. Defendants request that alternative expressly. No reconsideration of the prior rulings is necessary to authorize an amendment confined to matters those rulings did not decide.

### B. Ownership of the parcel does not itself decide the enforceability of retained deed restrictions

The motion quotes a deed provision reserving to RPI and its successors, assigns, or designees the sole right to enforce, grant relief from, or dissolve the restriction. (Doc. 193, ¶ 4). The same provision addresses transfers that adversely affect adjoining owners or owners along the same side of the lake and identifies prohibition of physical lake access as an adverse effect. *Id.* Defendants allege that an assignment places them in the position of the holder of those retained enforcement rights. *Id.*, (¶¶ 5–10).

An assertion that Plaintiffs hold title subject to an enforceable restriction does not necessarily deny their title. Likewise, authority to enforce a covenant is not necessarily an ownership interest in the burdened parcel. Plaintiffs' contention that RPI retained no ownership remainder therefore does not, without further analysis, dispose of a distinct reservation of enforcement authority.

The distinction is especially important here because Plaintiffs themselves separate the assignment issue from their previously adjudicated theories. They state that, if properly pleaded, they will challenge the validity of the assignment, the existence and enforceability of the restriction, and its legal consequences. (Doc. 198, pp. 11–12). Defendants do not characterize that statement as a concession of validity. It does demonstrate, however, that the opposition identifies discrete questions requiring analysis beyond the proposition that Plaintiffs own the land.

Defendants acknowledge the actual language of the instrument. The covenant begins by addressing a sale, assignment, gift, bequest, or other transfer without the grantor's consent when the transfer would adversely affect protected owners. Its reference to prohibiting access must be read in that context. Defendants therefore do not ask the Court to assume that the provision necessarily creates an unconditional pedestrian easement, that every exclusion violates it, or that ownership automatically reverts. Their position is that the retained enforcement language and the alleged assignment warrant a separate determination of the covenant's reach and its effect upon the relief Plaintiffs seek.

That determination must account for whether the restriction applies to

the conduct at issue, whether the rights were assignable and effectively assigned, whether they survived the prior agreements and judgments, and what defensive consequence follows. If the governing instruments conclusively defeat the defense, futility may be established. But ownership alone does not answer those questions, and Plaintiffs' stated intention to prevail in later merits proceedings is not a substitute for demonstrating that the distinct defense is legally unavailable now.

### C. Prior decisions should be applied to the particular rights and issues they resolved

Defendants recognize the force of the July 14 rulings by this Court. The Court rejected the prescriptive-easement counterclaim under claim preclusion, the implied-easement counterclaim under the 2006 Agreement and an additional waiver ground, and the declaratory counterclaim predicated on those easements. (Doc. 186, pp. 14–21 & n.5). Rewording those claims as affirmative defenses would not restore them. Nor does an assignment permit Defendants to obtain rights RPI did not possess or evade a judgment binding RPI and the assigned rights. Those issues are preserved for appellate purposes.

The assignment theory nevertheless requires identification of the relevant legal capacity. The Court held that Defendants, as Drace's

successors, are bound by the 2006 Agreement and cannot assert the implied easement released by Drace. (Doc. 186, p. 19). It struck the original defenses denying that binding relationship. *Id.*, (p. 22). The proposed assignment defense cannot depend on denying either ruling. Its asserted source is instead RPI's retained enforcement authority under the deed and the subsequent instrument naming Defendants and ALO as assignees. Whether that distinct authority survived and was effectively assigned requires its own analysis.

The July 14, 2026 Memorandum Opinion by this Court does not construe the deed's reserved covenant-enforcement clause or adjudicate the validity or effect of the RPI assignment. The collateral-estoppel analysis identifies the adjudicated issue as Plaintiffs' ownership of the Western Shore Strip. (Doc. 186, pp. 23–25). The Court's stated test requires identity between the issue previously decided and the issue later presented. (Doc. 186, p. 24) (citing *Witkowski v. Welch*, 173 F.3d 192, 198 (3d Cir. 1999)). Defendants' narrower defense can accept Plaintiffs' ownership while asserting a restriction upon the relief sought. The Court should determine whether that particular issue is identical to an adjudicated issue, rather than treating every question concerning the same land as an ownership dispute.

The Court's broader statement that Defendants' possessory-rights

claims are meritless must also be addressed. (Doc. 186, pp. 22–23). That statement follows its discussion of the prescriptive and implied easements barred by the 2006 Agreement. Defendants do not ask to reinstate those possessory claims. The proposed narrower defense concerns enforcement authority alleged to have been retained by the grantor, rather than a possessory estate derived from Drace or acquired through historical use. If the assigned right itself was released or adjudicated, Defendants cannot revive it; but the easement ruling does not expressly decide that question.

This distinction does not assume that acquiring an assignment after an adverse ruling defeats preclusion. Acquisition cannot recreate an extinguished right. Defendants must establish both that RPI retained a right capable of assignment and that no release or judgment extinguished it. Conversely, Defendants' own prior release of an easement claim does not, without examining the relevant instruments and parties, establish that every subsequently acquired covenant-enforcement right was also extinguished.

Proposed Defenses 25 and 27 illustrate the appropriate remedy. Plaintiffs quote both as asserting the RPI assignment while also invoking notice or prescription. (Doc. 198, pp. 11–12). If those accompanying theories are barred, the Court may exclude them and permit the assignment issue alone. Defendants request that narrower alternative

without asking the Court to reconsider the rulings barring the accompanying theories.

**D. Notice of Plaintiffs' title and enforceability of a separate obligation are distinct issues**

The July 14 Memorandum Opinion recounts the earlier ruling that the recorded reservation of the shoreline strip defeated the asserted bona fide purchaser theory concerning that land. (Doc. 186, pp. 8–9). It also holds directly that Defendants are bound by the 2006 Agreement as Drace's successors. *Id.*, (pp. 19, 22). The absence of a county lis pendens does not, through amendment alone, undo those rulings. Defendants do not contend that it erases the recorded reservation or transfers Plaintiffs' fee title to them.

The supporting brief filed in support of the pending motion distinguished notice of title from notice of an unrecorded settlement. Whatever the conceptual distinction, it does not supply a basis on this motion to disregard the Court's ruling that the Agreement binds these Defendants. The requested leave can be granted without reinstating that notice-based challenge. The assignment-based defense should therefore be evaluated independently of the proposed assertion that Defendants are not bound by the Agreement.

Accordingly, the requested leave need not depend on reinstatement of a broad bona fide purchaser defense. If the Court determines that its prior ruling forecloses the notice theory as pleaded, Defendants request that the Court exclude it while separately considering the assignment-based defense. This preserves the Court's determination concerning ownership and avoids making the independent assignment issue turn on a disputed notice theory.

### E. The reservation of future claims is not an adjudication of liability on those claims

Plaintiffs criticize proposed Affirmative Defense 23 because it refers to the Third Circuit's earlier reservation of the future-trespass issue. (Doc. 198, pp. 14–15). The Court subsequently addressed that issue in the March 28, 2025 Memorandum and held that the 2006 Agreement did not release future claims. (Doc. 81, pp. 9–14). Defendants do not rely on the earlier reservation as though the later decision had never occurred.

The pertinent distinction is between permission to sue and proof of entitlement to relief. The 2019 Agreement expressly preserved defenses, as reproduced in this Court's Memorandum. *(*pp. 5–6). That language does not grant a new property right, override an earlier judgment, or restore a released easement. It does establish that the reservation of Plaintiffs' future

claims was not an agreement to impose liability without regard to otherwise available defenses.

Thus, any unnecessary or overbroad reference in proposed Affirmative Defense 23 can be omitted or clarified as a condition of amendment. Defendants seek no ruling that the 2006 Agreement categorically bars the present action. The assignment issue should stand or fall on its own legal and documentary basis.

Plaintiffs also group proposed Affirmative Defenses 21, 22, 26, and 34 with the challenged defenses without separately explaining why every application of limitations, the 2019 Release, or permission is foreclosed. (Doc. 198, p. 13). Those defenses should likewise be assessed individually. A limitations defense concerning a discrete entry does not necessarily challenge ownership. The 2019 Release, as reproduced by the Court, distinguishes pre-April 1, 2019 trespasses from reserved continuing and later trespasses. (Doc. 81, pp. 5–6). Defendants do not seek to eliminate that express distinction or to bar reserved continuing claims merely because they began earlier.

Similarly, a defense based on actual permission for particular conduct during a particular period is conceptually different from a permanent prescriptive or implied easement. Any permission theory must identify a

legally effective authorization applicable to the conduct and period in question and remain subject to the Court's prior decisions. Defendants request leave only to the extent these defenses have an independent, non-foreclosed basis; their inclusion in Plaintiffs' list does not itself supply the substantive analysis required to reject them all. The Court can require clarification rather than allow duplicative or conclusory formulations.

### F. Plaintiffs' objections do not establish bad faith or undue prejudice from the narrower amendment

Plaintiffs' principal prejudice argument is that they should not have to litigate resolved matters repeatedly. (Doc. 198, p. 7). Your answering defendants are unaware of any litigated matter with evidentiary proof involving the Abernathy's. A conditional order excluding foreclosed theories addresses that concern directly. The distinct assignment issue concerns the same shoreline dispute and deed already identified in the motion. Plaintiffs' opposition demonstrates awareness of the issue and identifies the grounds on which they intend to contest it.

The supporting brief to the pending motion represents that discovery has consisted of paper exchanges and that no depositions have been scheduled or conducted. (Doc. 197 § IV.B). Plaintiffs do not identify a lost witness, unavailable document, or necessary repetition of completed

depositions attributable to a confined assignment defense. The Court's July 14, 2026, ruling itself distinguished legally barred defenses from relevant defenses that did not cause prejudice: it declined to strike original Affirmative Defenses 1, 4, 7, 9, and 15. (Doc. 186, pp. 25–26). That previously referenced ruling does not establish the validity of any new defense, but it supports separate evaluation rather than a categorical conclusion that every defense concerning this dispute causes prejudice.

Nor does the combination of disputed theories in a proposed pleading compel an inference of bad faith sufficient to defeat every amendment. Defendants request a concrete; narrower alternative that removes any portion the Court finds barred. That course protects the prior rulings and focuses the case on the remaining disputed issue.

Plaintiff's have not had to litigate through evidence the claim against the Abernathy's. The movants herein are merely seeking to establish, through pleading only, affirmative defenses. Naturally, as the matter proceeds to trial, the defense will bear the burden of evidentiary proof as will Plaintiff on their claim of trespass.

### G. The Court can require clarification and an identified comparison without denying all leave

The numbering must also be kept distinct. The July 14, 2026

disposition concerns the thirty defenses in the original answer (Doc. 126) and lists the fifteen stricken original defenses. (Doc. 186, p. 26). The proposed pleading contains thirty-six defenses, including changed allegations under reused numbers. Whether a proposed defense is foreclosed turns on its substance and source, not merely a number matching one in the prior order. The proposed marked comparison should identify both the old text and the proposed replacement so the Court can apply its ruling accurately.

Plaintiffs object under Local Rule 15.1(b) that the submitted pleading does not adequately identify additions and deletions. (Doc. 198, p. 2 n.1, pp. 8–13). Simple comparison by support staff can accomplish the review. Should the Court so require, Defendants request an opportunity to supply a complete, clarified proposed pleading and an appropriately marked comparison identifying the changes. Defendants do not ask the Court or Plaintiffs to reconstruct the changes unaided.

In particular, the assignment defense can be stated independently of disputed ownership, prescription, and notice allegations: Plaintiffs' requested relief is barred or limited to the extent an enforceable restriction in the RPI deed, and surviving enforcement rights validly assigned to Defendants, preclude the exclusion or relief sought. Defendants would

identify the deed, the retained authority, the assignment naming them, and the allegedly prohibited exclusion. This formulation accepts the existing title adjudication and does not claim that the assignment itself creates an easement, transfers Plaintiffs' fee, or automatically triggers reversion.

Defendants request leave conditioned upon filing that clarified pleading and comparison within a period fixed by the Court, with Plaintiffs afforded an opportunity to respond to the revisions. This would cure the presentation objection while allowing the Court to enforce its substantive limitations. It would not deem a comparison already filed or introduce a new claim for affirmative relief through a reply brief.

The Abernathy's request rests on the subsequently acquired assignment, rather than simply on the age of the underlying deed. The assignment was recorded August 3, 2026, after the July 14, 2026 ruling, and was tendered prior to and with the present motion. That chronology supports treating this request as an effort to plead a subsequently documented right rather than merely repeating an earlier argument. Recording alone does not establish when the assignment became effective or when counsel first could have asserted it; the Court should evaluate diligence by the full chronology of obtaining and asserting the assigned rights. If the existing submission requires further detail, Defendants request

an opportunity to provide a dated declaration and the relevant instruments before disposition of that issue. Lack of prejudice alone is not offered as a substitute for good cause.

## V. CONCLUSION

For these reasons, and those set forth in the previously filed Motion, Defendants Michael G. Abernathy and Mary B. Abernathy respectfully request that the Court grant leave to file the proposed Amended Answer with Affirmative Defenses pursuant to Federal Rule of Civil Procedure 15(a)(2), and, to the extent necessary, find good cause under Rule 16(b)(4).

Dated: October 22, 2026

Respectfully Submitted,

By: *Harry Coleman*

Harry T. Coleman, Esquire
Attorney Id. No. 49137
41 N. Main Street
3rd Floor, Suite 316
Carbondale, PA 18407
(570) 282-7440
Harry@harrycolemanlaw.com

*Attorney for Abernathy Defendants*